**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BENJAMIN SMALLS,

                              Petitioner,

        - *against* -

WILLIAM LEE, Superintendent,

                    Respondent.

12 Civ. 2083 (KMK)(LMS)

<u>REPORT AND</u>
<u>RECOMMENDATION</u>

**TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.[1]**

On March 12, 2012, Petitioner Benjamin Smalls ("Petitioner"), proceeding *pro se,* filed a

petition for a writ of habeas corpus ("the 2012 petition") pursuant to 28 U.S.C. § 2254,

challenging his 1999 judgment of conviction for Kidnapping in the First Degree, two counts of

Assault in the Second Degree, Burglary in the First Degree, Criminal Use of a Firearm in the

First Degree, three counts of Criminal Possession of a Weapon in the Third Degree, and

Menacing in the Second Degree, and his sentence of an indeterminate term of imprisonment of

from twenty-five years to life for kidnapping, a determinate term of imprisonment of twenty-five

years for criminal use of a firearm, a determinate term of imprisonment of seven years for each

assault count and two of the counts of criminal possession of a weapon in the third degree, and a

determinate term of imprisonment of one year for menacing, all terms of imprisonment to run

concurrently with one another and the term of imprisonment for the kidnapping count to also run

---

[1] On April 27, 2012, Petitioner's application was referred to this Court by the Honorable
Kenneth M. Karas.  D.E. 8.

consecutively with a determinate term of imprisonment of seven years for one of the counts of criminal possession of a weapon.  D.E.  2.[2]

The 2012 petition[3] raises the following seven grounds for relief: (1) Petitioner is actually innocent and the court did not have jurisdiction over Petitioner because there were no charges filed against him in the instant case, (2) Petitioner was deprived of counsel at his sentencing proceedings, (3) the sentencing court relied on "information outside the province of the jury to enhance the sentence," (4) Petitioner was deprived of due process of law when the Appellate Division dismissed Petitioner's appeal, (5) Petitioner was deprived of due process of law when the Appellate Division "failed to review his" *pro se* supplemental brief, (6) the People violated their burden under *Brady v. Maryland,* 373 U.S. 83 (1963), because they failed to disclose that the grand jury did not indict Petitioner, and (7) the prosecution filed a false affidavit stating that the prosecution had filed an opposition to Petitioner's supplemental brief.  D.E. 2.  Additionally, Petitioner's supplemental memorandum of law, dated December 4, 2013, and filed on February 24, 2014, argues that the People failed to satisfy their burden under *Brady* because the People failed to disclose to Petitioner that the attorney "he hired to represent him at trial… and to perfect his [d]irect [a]ppeal was an unlicensed attorney."  D.E. 46 at 1.  Petitioner also claims that the fact that his various attorneys were unlicensed rendered those attorneys ineffective, and that this information "bolsters" his claims that the trial court lacked subject matter jurisdiction over Petitioner and that the Appellate Division erred in dismissing Petitioner's original direct appeal.  *Id.* at 5-10.

---

[2] Whether the operative date for Petitioner's judgment of conviction is the date of his original sentencing in 1999, or his resentencing in 2009, is disputed by the parties and will be discussed below.

[3] On July 21, 2006, Petitioner had delivered to prison authorities an amended federal petition for a writ of habeas corpus ("the 2006 petition"), based on his sentencing in 1999. The rather complex history of this case is referenced further below.

For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that this Petition should be dismissed in its entirety.

## BACKGROUND[4]

The procedural history of Petitioner's case, from the commencement of his state criminal case in 1998, through the Decision and Order denying his motion pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure for an Order to vacate the Decision and Order denying his 2006 petition for a writ of habeas corpus under 28 U.S.C § 2254, can be found in Judge Seibel's September 10, 2009, Memorandum Decision and Order. *Smalls v. Smith,* No. 05 Civ. 5182 (CS), 2009 WL 2902516 (S.D.N.Y. Sept. 10, 2009).[5]

As relevant to the Court's instant analysis, in July of 2006, Petitioner filed the 2006 petition, in which he raised five grounds for relief: (1) the state court did not have jurisdiction over Petitioner because there was no indictment, (2) Petitioner was deprived of the effective assistance of counsel at his sentencing, (3) Petitioner was deprived of his right to counsel on

---

[4] The transcript of Petitioner's trial was not in the file provided to the Court by the clerk's office and the Court is not otherwise in possession of the transcript. Counsel for Respondent informed the Court that she does not have an independent recollection of whether she provided the clerk's office with a transcript, but that it is her practice in every habeas case to provide the clerk's office with a transcript. Further, the clerk's office has informed the Court that it does not have a copy of the transcript. It is possible that the transcript is in the archived clerk's file that is associated with Petitioner's 2006 petition. Although the court requested the 2006 file from the clerk's office several weeks ago, the clerk's office has not yet obtained the file. Nevertheless, as Your Honor noted in the Order denying Petitioner's request for the production of the transcript, "[t]he claims in the Petition do not require the Court to review the underlying trial transcript." D.E. 33, at 2. Upon an independent and thorough review of the 2012 petition, as well as Petitioner's supplemental memorandum, the undersigned concurs with Your Honor's assessment that a review of the trial transcript is not required in this case. For that reason, this Report and Recommendation does not include a description of the underlying crime, or in any way refer to the trial transcript.

[5] A procedural history of Petitioner's case, up to and including Respondent's request that the instant petition be transferred to the Second Circuit on the ground that it is a second or successive habeas petition, can be found in this Court's July 25, 2012, Report and Recommendation. D.E. 20.

appeal when the Appellate Division dismissed his appeal, (4) the dismissal of Petitioner's direct appeal deprived him of his right to due process and his right to equal protection, and (5) Petitioner is actually innocent because there was no indictment. Resp't's Ex. 25, D.E. 25.[6]  On November 28, 2006, the district court dismissed the 2006 petition on the ground that it was filed after the expiration of the one year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Smalls v. Smith,* No. 05 Civ. 5182 (CLB), 2006 WL 3478983 (S.D.N.Y. Nov. 10, 2006); Resp't's Ex. 27, D.E. 25.  Alternatively, the court found that Petitioner's claims were procedurally barred because the Appellate Division had dismissed the claims under the fugitive disentitlement doctrine. *Id.*  In September of 2009, Judge Seibel denied Petitioner's Rule 60(b)(4) motion and held, in part, that the district court had correctly rejected the 2006 petition on the ground that it was untimely. *Smalls,* 2009 WL 2902516.[7]

In May of 2009, Petitioner moved in the Supreme Court, Westchester County, to vacate his sentence pursuant to CPL § 440.20, on the grounds that (1) the sentencing court failed to orally impose the required term of post-release supervision ("PRS"), (2) the People failed to move to set aside Petitioner's sentence, thereby divesting the court of jurisdiction, and (3) Petitioner should be resentenced to a determinate term of imprisonment on the count of Kidnapping in the First Degree. Resp't's Ex. 33, D.E. 25.  On or about May 29, 2009, the People submitted a response in opposition. Resp't's Ex. 34, D.E. 25.  In a Decision and Order dated June 29, 2009, the court (Zambelli, J.), held that (1) Petitioner's indeterminate sentence for Kidnapping in the First Degree was a valid sentence, and (2) pursuant to *People v. Sparber,* 10 N.Y.3d 457 (2008), Petitioner was entitled to be resentenced so that the court could orally

---

[6] All citations to "Resp't's Ex. ___" refer to exhibits submitted to the Court as part of Respondent's memorandum of law in opposition to the instant petition. D.E. 25.
[7] On April 9, 2010, the Second Circuit Court of Appeals denied Petitioner's application for a certificate of appealability. Resp't's Ex. 32, D.E. 25.

pronounce the required terms of PRS. Resp't's Ex. 35, D.E. 25.[8] On August 18, 2009, Petitioner

appeared for resentencing with assigned counsel Paul Pickelle, Esq., and the court (Zambelli, J.),

pursuant to *Sparber*, added various terms of PRS to Petitioner's determinate terms of

imprisonment. Resp't's Ex. 47, D.E. 25.[9]

In April of 2009, Petitioner, represented by Marianne Karas, Esq., filed a direct appeal in

the Appellate Division, Second Department, in which Petitioner argued that (1) he was deprived

of the effective assistance of counsel at his re-sentencing, and (2) the court erred in not holding a

hearing to re-evaluate Petitioner's entire sentence prior to imposing the terms of PRS. Resp't's

Ex. 36, D.E. 25. In May of 2010, the People submitted a brief in opposition. Resp't's Ex. 37,

D.E. 25. In January of 2011, Petitioner filed a supplemental brief (Resp't's Ex. 38, D.E. 25), and

Respondent submitted a supplemental response in opposition (Resp't's Ex. 39, D.E. 25). In a

Decision and Order dated May 26, 2011, the Appellate Division affirmed Petitioner's resentence.

The court held that to the extent that Petitioner's "claims of ineffective assistance of counsel are

based upon matters dehors the record, they may not be reviewed on direct appeal" and, insofar as

---

[8] In *Sparber*, the sentencing court failed to orally impose a term of PRS as required by statute. *Sparber,* 10 N.Y. 3d at 469-71. To correct this "procedural error," *Sparber* held that the defendant must be resentenced "so that the trial judge can make the required pronouncement." *Id.* Following *Sparber*, the New York State Legislature enacted Penal Law § 70.85 and Correctional Law § 601-d. Pursuant to these provisions, if a court fails to orally impose a required term of PRS, the Department of Corrections and Community Supervision (DOCCS) must notify the court of that fact, and once the court receives such notification from DOCCS, the court must hold a resentencing proceeding and either pronounce the required term of PRS or, upon consent of the district attorney, reimpose the original determinate prison term without PRS. *People v. Boyer,* 22 N.Y.3d 15, fn. 1-2 (2013).

[9] On August 17, 2000, following Petitioner's original sentencing, an amended sentence and commitment sheet was filed to correct a clerical error in the original sentence and commitment sheet; namely, that, contrary to the sentencing court's oral pronouncement of Petitioner's sentence, the sentence and commitment sheet inaccurately reflected that all of Petitioner's sentences would run concurrently. Resp't's Affidavit at p. 9, D.E. 24. While some of the state court filings refer to this amendment as a resentencing, for the purpose of clarity, this Court will use the term resentencing to refer to the *Sparber* resentencing that took place in 2009.

the court could "review those claims, defense counsel provided [Petitioner] with meaningful representation." *People v. Smalls,* 84 A.D.3d 1122 (2d Dept. 2011); Resp't's Ex. 40, D.E. 25. The court further held that the remaining claims raised in Petitioner's brief were not preserved for review and that the claims raised in his supplemental brief were not properly before the court. *Id*. On August 4, 2011, the New York State Court of Appeals denied Petitioner's application for leave to appeal. *People v. Smalls,* 17 N.Y. 3d 822 (2011).

On March 12, 2012, Petitioner filed the instant petition, raising the following seven grounds for relief: (1) Petitioner is actually innocent and the court lacked jurisdiction over him because there were no charges filed against him in the instant case, (2) Petitioner was deprived of counsel at his sentencing proceedings, (3) the sentencing court relied on "information outside the province of the jury to enhance the sentence," (4) Petitioner was deprived of due process of law when the Appellate Division dismissed Petitioner's appeal, (5) Petitioner was deprived of due process of law when the Appellate Division "failed to review his" *pro se* supplemental brief, (6) the People failed to disclose that there were no charges against Petitioner and that the grand jury did not indict Petitioner, and (7) the prosecution filed a false affidavit stating that the prosecution had filed an opposition to Petitioner's supplemental brief.  D.E. 2.

In a letter dated May 1, 2012, Respondent noted that Petitioner's 2006 petition had been denied, and requested that Petitioner's 2012 petition be deemed a second or successive petition, and transferred to the Second Circuit.  D.E. 13.  In prefacing this argument, Respondent noted that "Petitioner contends that [the *Sparber* resentencing] serves to restart the period of limitations… as to all of the claims made both in regard to the conviction and in regard to the resentencing.  While respondent will contest that assertion, respondent first brings to the Court's attention that this is a second and successive petition that may not be properly before it under 28

U.S.C. 2244(b)(3)." *Id.* Respondent did not address the impact Petitioner's *Sparber* resentencing may have had on whether his 2012 petition was second or successive. *Id.*

In a Report and Recommendation issued on July 25, 2012, this Court recommended to Your Honor that Petitioner's 2009 resentencing resulted in an "amended judgment" and, therefore, that Petitioner's 2012 petition was "not second or successive to his 2005 petition."[10] D.E. 20.  No objections were filed.  On September 24, 2012, Your Honor adopted the Report and Recommendation and directed Respondent to serve and file a response.[11]  D.E. 23.

On November 11, 2012, Respondent filed an affidavit and memorandum of law in opposition to the 2012 petition.  D.E. 24, 25.  Respondent argued that the 2012 petition was barred by AEDPA's one year statute of limitations because Petitioner's resentencing pursuant to *Sparber* did not result in a new judgment of conviction and, therefore, Petitioner's original sentencing date was the operative date for calculating the timeliness of the instant petition.  D.E. 25, at 7.  Alternatively, Respondent argued that Petitioner's claims were meritless, procedurally barred, or not cognizable on habeas review.  D.E. 25.  On December 5, 2012, Petitioner filed a reply.  D.E. 27.

In a memorandum of law dated December 4, 2013, Petitioner sought to supplement his petition based on "newly discovered evidence."  D.E. 46.  Petitioner argued that the People had

---

[10] In this Court's July 25, 2012, Report and Recommendation, the Court referred to Petitioner's initial Petition under case number 05 Civ. 5182 as the "2005 petition" because Petitioner first filed that petition in 2005. In the instant Report and Recommendation, the Court refers to that initial petition as the "2006 petition" because Petitioner filed an amended Petition in that case in 2006, and it is the claims in that amended Petition which are relevant to the Court's legal analysis.

[11] Your Honor noted that "Petitioner has no objections to Magistrate Judge Smith's recommendation of a denial of the motion to transfer the Petition." In a footnote, Your Honor observed that Petitioner objected to the "recommendation that Respondent be allotted 45 days to serve and file an answer to the Court's order," but that "these objections [are] irrelevant to the merits of Respondent's motion and without any legal basis."  D.E. 23.

failed to satisfy their burden under *Brady*, because the People failed to disclose to Petitioner that the attorney "he hired to represent him at trial... and to perfect his [d]irect [a]ppeal was an unlicensed attorney."  D.E. 46 at 1.  Petitioner also argued that this fact rendered counsel ineffective, and "bolsters" his claims that the trial court lacked subject matter jurisdiction over him and that the Appellate Division erred in dismissing his appeal.  *Id.* at 5-10.  In a letter response dated January 31, 2014, Respondent argued that Petitioner's claim that his attorney was unlicensed was irrelevant to his instant habeas petition and without merit.  Respondent further argued that the remaining assertions in Petitioner's supplemental memorandum were already "addressed by the People in previous opposition papers."  D.E. 44.  On or about February 14, 2014, Petitioner submitted a reply.  D.E. 47.

On or about September 17, 2015, Petitioner moved for summary judgment pursuant to Fed. R. Civ. P. 56.  D.E. 53.  On November 16, 2015, Respondent submitted a response in opposition.  D.E. 59.  On or about November 25, 2015, Petitioner submitted a reply.  D.E. 60.

## DISCUSSION

### I.      Applicable Law

"Habeas review is an extraordinary remedy."  *Bousley v. United States*, 523 U.S. 614, 621 (1998), citing *Reed v. Farley*, 512 U.S. 339, 354 (1994).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of AEDPA.  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If a petitioner has met these threshold requirements, a federal district court generally may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the

ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).

Under AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b)(1), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> > (B) (i) there is an absence of available State corrective process; or
> > > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. *Picard*, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at

191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." *Daye*, 696 F.2d at 192.  A claim that has not been "fairly presented" in state court is procedurally defaulted and is precluded from federal habeas review, unless Petitioner can show cause for the default, and prejudice resulting from the alleged violation of federal law, or that a fundamental miscarriage of justice will occur if the claim is not considered. *Coleman*, 501 U.S. at 750; *Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Circ. 2005). Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. *Klein*, 667 F.2d at 282.  Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. *Id.* (citing *Williams v. Greco*, 442 F.Supp. 831, 833 (S.D.N.Y. 1977)).

There is, however, another avenue available for exhaustion purposes.  A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. *See id.*; *see also Johnson v. Metz*, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to NYCPL § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. *Klein*, 667 F.2d at 282-83.  A petitioner "need not have invoked every possible avenue of state court review." *Galdamez*, 394 F.3d at 73.  Instead, a petitioner must give the state courts "one full opportunity" to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A habeas petitioner

who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court unless he or she can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Even where a timely and exhausted habeas claim is raised, comity and federalism demand that a federal court abstain from its review of a habeas petition when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman*, 501 U.S. at 730; *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740). A decision will be "adequate" if it is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

Provided a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted). The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 68-69 (citation omitted). In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* (internal quotation marks and citations omitted).

## II.   The Timeliness of the 2012 Petition

AEDPA imposes a one year statute of limitations on a prisoner's ability to seek federal habeas review. 28 U.S.C. 2244(d). This limitations period is subject to equitable tolling if a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances ... prevented timely filing." *Hayes v. Lee,* No. 11 Civ. 1365 (KMK)(PED), 2015 WL 5943677 at *5 (S.D.N.Y. Oct. 13, 2015); *Holland v. Florida,* 560 U.S. 631, 649 (2010) (internal quotation marks omitted). The limitations period is calculated from the date on which a petitioner's judgment of conviction becomes "final by the conclusion of

direct review or by the expiration of time for seeking such review." *Id*. A judgment includes both a conviction and the sentence. *Magwood v. Patterson,* 561 U.S. 320, 342 (2010).

Respondent asserts that Petitioner's judgment became final "90 days after the Appellate Division granted the People's motion to dismiss Petitioner's direct appeal, or June 15, 2000," and that Petitioner's *Sparber* resentencing in 2009 did not result in an amended judgment of conviction. D.E. 25 at 8. Respondent asserts that, so calculated, Petitioner's 2012 petition is untimely. The core of Respondent's timeliness argument is that a *Sparber* resentencing is purely ministerial, is not a plenary proceeding, and does not allow the court to review or amend the judgment. D.E. 25 at 9-14. Respondent asserts that a *Sparber* resentencing simply serves to correct a "procedural error, akin to a misstatement or clerical error," but does not result in a new judgment. D.E. 25 at 11, citing *Sparber,* 10 N.Y.3d at 472.

Neither the Supreme Court, nor any published opinion from the Second Circuit, has opined on whether a *Sparber* resentencing results in an amended judgment for habeas purposes. The case of *Magwood v. Patterson,* 561 U.S. at 320, in conjunction with recent cases from the Second Circuit and the New York State Court of Appeals, however, provides some guidance on this question.

In *Magwood,* the Supreme Court held that a petition was not second or successive because a resentencing had resulted in an "intervening judgment." *Magwood,* 561 U.S. at 322. The resentencing in *Magwood* involved "a complete and new assessment of all of the evidence, arguments of counsel, and law." *Magwood,* 561 U.S. at 323. In *Magwood,* the petitioner only challenged his new sentence, and the Supreme Court explicitly declined to address whether "a petitioner who obtains a conditional writ as to his sentence [would be permitted] to file a subsequent application challenging not only his resulting, *new* sentence, but also his original,

*undisturbed* conviction." *Id.* at 342 (emphasis in original). Thereafter, in *Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010), the Second Circuit held that a second petition, raised after an intervening amended judgment, may challenge the original conviction, sentence or both.

In *Marmolejos v. U.S.*, 789 F.3d 66, 70-71 (2d Cir. 2015), the Second Circuit, citing *Magwood,* held that a correction to a clerical error in a judgment order pursuant to Fed. R. Civ. P. 36, such as a correction to a petitioner's name, does not result in an amended judgment. In *Gonzalez v. U.S.*, 792 F.3d 232 (2d Cir. 2015), decided one month after *Marmolejos,* the Second Circuit held that a vacatur of a sentence of restitution, followed by a remand for the district court to determine "the true extent of the victims' losses and order restitution in that revised amount," resulted in an amended judgment because the district court was "required to re-calculate the restitution order—rather than merely enter a new judgment—following substantive communication between the parties and between the parties and the Court." *Id. at 236.* The *Gonzalez* court also noted that in a previous case, *Burrell v. United States,* 467 F.3d 160 (2d Cir. 2006), the court held that "where one count of conviction was vacated but the life sentence remained intact, and the District Court was faced on remand with only the ministerial task of entering a judgment without the vacated count, for purposes of the AEDPA limitations period the conviction had become final with the original judgment." *Gonzalez,* 792 F.3d at 236, citing *Burrell,* 467, F.3d at 165-67. In *Burrell,* the court "distinguished between cases where a 'remand was strictly ministerial in that it required a routine, nondiscretionary act by the district court that could not have been appealed on any valid ground,' and cases where 'our mandate left the district court the authority on remand to entertain the new arguments [defendant] advanced.' " *Id.* These cases, taken together, yield a basic principle: "Where a conviction is vacated and the cause is remanded for substantive proceedings, the new judgment is subject to renewed collateral attack

under AEDPA. In contrast, where a trial court has only the ministerial task of entering a new judgment, the original judgment is the relevant judgment for habeas purposes." *Id.*

The purpose of a *Sparber* resentencing is to allow the court to correct a discreet error under New York Law. New York's Penal Law mandates that, where a period of PRS is a required component of a defendant's sentence, the sentencing court must orally pronounce the term of PRS. *Sparber,* 10 N.Y.3d at 470. If a court fails to orally pronounce the PRS component of the sentence, the court must correct that error by either orally pronouncing the term of PRS at a resentencing proceeding (Correction Law § 601-d) or, upon consent of the district attorney, reimposing the original sentence without a term of PRS (NY Penal Law § 70.85). At such a proceeding, the court may do nothing more than "correct the discrete error prompting the resentencing in the first place." *People v. Lingle,* 16 N.Y.3d 621, 634 (2011). In enacting this remedy, the Court of Appeals explicitly stated that a "*Sparber* error 'amounts only to a *procedural* error, *akin to a misstatement or clerical error*, which the sentencing court [can] easily remedy' " and that resentencing pursuant to *Sparber* does not constitute a "plenary proceeding." *Id.* (emphasis in original).

Furthermore, without the express consent of the district attorney – an independent entity over which the court has no control – a court conducting a *Sparber* resentencing has no discretion whatsoever; it must orally pronounce the statutorily required term of PRS. Additionally, the cases and statutes governing *Sparber* resentencings do not provide for arguments or submissions to be made by the parties; nor would such arguments have any utility given the narrowly proscribed scope of the court's authority at a *Sparber* resentencing. Thus, where, as here, the district attorney does not consent to the reimposition of the original sentence without a term of PRS, the resentencing court's mandatory oral pronouncement of the term of

PRS appears to be the paradigmatic "ministerial task of entering a new judgment" under the standard articulated in *Gonzalez,* 792 F.3d at 236.  Indeed, the *Sparber* resentencing in this case seems far more analogous to the correction of the discrete, ministerial error described in *Marmolejos,* than it does to the scenario in *Magwood* which required a reexamination of the evidence, or the scenario in *Gonzalez,* which required that the court recalculate the sentence after substantive communications with the parties.  Accordingly, a *Sparber* resentencing at which the district attorney has not consented to the reimposition of the original sentence without a term of PRS is not substantive and should not result in an amended judgment.[12]

Furthermore, although the question of when a conviction becomes final for the purpose of triggering AEDPA's one year statute of limitation is one of federal law  (*Clay v. U.S.*, 537 U.S. 522 (2003)), the conclusion that a *Sparber* resentencing does not result in an amended judgment is strongly supported by New York case law.  In *People v. Boyer*, 22 N.Y.3d 15 (2013), a case decided after the filing of Respondent's answer, the defendant-appellant argued that, at a *Sparber* resentencing, the court "vacates the defendant's prior illegal sentence and replaces it with a lawful sentence." *Id. at 23*. The New York State Court of Appeals disagreed, and held that:

> …a *Sparber* resentencing cannot alter the original date of sentence. Given that the resentencing court cannot disturb the defendant's prison sentence for the prior conviction, the original sentence is not a legal nullity vacated by the pronouncement of PRS. Rather, the conviction and sentence imposed on the original sentence date still stand, and the sentence is simply modified to the limited extent of pronouncing the PRS term required by law. In other words, irrespective of any "resentence" pursuant to *Sparber,* the original "[s]entence" for "such prior conviction" remains valid, and that original sentence was "imposed before commission of the present felony," thereby qualifying the prior conviction as a predicate felony conviction for purposes of sentencing on the current crime (Penal

---

[12] Since this Court is not presented with the circumstance in which the district attorney has consented to the omission of PRS, the Court declines to opine on whether the resentencing in such a case would result in an amended judgment for the purpose of determining finality in the habeas context.

Law § 70.04[1][b] [ii]; *see also* Penal Law §§ 70.06[1][b][ii]; 70.10[1][b][ii] ).

*Boyer,* 22 N.Y.3d at 25-26. This language, although employed in a different context, strongly suggests that a *Sparber* resentencing is different from the type of resentencing contemplated in *Magwood* and that Petitioner's *Sparber* resentencing did not result in a new judgment for the purpose of calculating the timeliness or successiveness of the 2012 petition. Indeed, notwithstanding the federal nature of the finality question, it would be anomalous given AEDPA's emphasis on comity, federalism and the importance of the finality of state convictions (*see Rhines v. Weber,* 544 U.S. 269, 276 (2005)), for federal law to deem a *Sparber* resentencing – an invention of state law – as an amended judgment, when New York State itself has explicitly stated that a *Sparber* resentencing is purely ministerial and does not alter the original date of conviction.

Moreover, while it is true that the policy considerations motivating New York State courts in their analyses of *Sparber* may be different than those of a federal court analyzing the impact of *Sparber* on AEDPA's statute of limitations, this Court is hard pressed to identify a single federal policy consideration that would be furthered by finding that a *Sparber* resentencing results in an amended judgment. By contrast, construing a *Sparber* resentencing as ministerial would comport with AEDPA's emphasis on comity and finality – particularly given New York State's own view of the effect of a *Sparber* resentencing on the finality of a defendant's conviction and the fact that a NYCPL § 440.20 motion for a *Sparber* resentencing has no statute of limitations. Indeed, the instant case exemplifies the inequity that would result from treating a *Sparber* resentencing as creating a new judgment for habeas purposes. Here, Petitioner absconded, filed an initial habeas petition in 2006, was resentenced pursuant to *Sparber* in 2009, and then filed the instant petition in 2012. In essence, if Petitioner's *Sparber*

resentencing resulted in a new judgment, it would permit him to attack a twelve year old conviction, for which he has already received habeas review, because a state court corrected the ministerial error of failing to orally pronounce the term of PRS required by his sentence. This result would seriously undermine New York State's interest in the finality of its convictions, based on a procedure that New York courts do not believe has any impact on finality and that vests the resentencing court with essentially no discretion. Further, since Petitioner has already had one full opportunity for habeas review, reviewing Petitioner's instant petition would be a far cry from guarding against "extreme malfunctions in the state criminal justice system[]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Rather, reaching the substance of untimely or otherwise second or successive habeas petitions due to *Sparber* resentencings would result in a windfall to petitioners based on an unanticipated and highly technical interplay between a state procedural mechanism created to cure what New York views as a ministerial error, and federal finality law. Accordingly, from a policy perspective, there appear to be good reasons to adopt New York State's own assessment of the impact of a *Sparber* resentencing on the finality of a defendant's conviction.

A *Sparber* resentencing, however, appears to be a unique procedural creature of state law that is not conducive to a seamless analogy to either *Marmolejos* or *Gonzalez*. Indeed, there are elements of a *Sparber* resentencing that have the flavor of a substantive proceeding; particularly where a court, upon consent of the District Attorney, reimposes a sentence without the required term of PRS. It is unsurprising, therefore, that the courts in this and other districts that have addressed this issue have reached conflicting conclusions. *Compare, Mercado v. Lempke,* No. 11 Civ. 6529 (SAS), 2015 WL 3879636 at *fn. 39 (S.D.N.Y. June 16, 2015) (noting that the court was inclined to agree with the respondent's position that a *Sparber* resentencing does not

regarding the grand jury indictment was without merit and not cognizable on habeas review, (2) there was "no basis to believe that his counsel's performance was 'deficient' " under *Strickland v. Washington*, 466 U.S. 668 (1984), and (3) the Appellate Division's dismissal of Petitioner's appeal under the fugitive disentitlement doctrine was neither contrary to nor an unreasonable application of Supreme Court precedent. *Smalls*, 2009 WL 2902516 at *5, 9-10. These findings constitute the law of the case and there is no cogent and compelling reason to revisit them.[16]

---

[16] Petitioner claims in his 2012 petition that the People's failure to disclose that there was no indictment voted in this case was a violation of the People's burden under *Brady* to disclose exculpatory material. Although this argument is slightly different than the argument Petitioner raised in his FRCP 60 motion, Judge Seibel's determination that Petitioner's claim that there was no indictment in this case was without merit, necessarily forecloses Petitioner's argument that the People failed to inform Petitioner that no indictment had been filed in this case. In any event, the lack of an indictment is not exculpatory within the meaning of *Brady* because it does not tend to show that Petitioner is not guilty or impeach a prosecution witness. *See Lewis v. Connecticut Com'r of Correction*, 790 F.3d 109, 123 (2d Cir. 2015) (for the purposes of establishing a *Brady* violation, "[e]vidence is favorable to the accused if it either tends to show the accused is not guilty or impeaches a prosecution witness"). Therefore, this Court concludes, and respectfully recommends that Your Honor conclude, that the law of the case doctrine requires the denial of Petitioner's *Brady* claim and, in any event, that it should be denied on the merits.

Furthermore, a typical claim of actual innocence relies on non-record facts and is properly raised in a NYCPL § 440.10 motion. Thus, ordinarily the Appellate Division's dismissal of a defendant's appeal based on the fugitive disentitlement doctrine, although constitutional, has no bearing on the defendant's ability to raise a collateral claim of actual innocence in a NYCPL § 440.10 motion and, after properly exhausting that claim, to raise it in a federal habeas petition either as a stand alone claim (*see e.g., DiMattina v. U.S.*, 949 F. Supp.2d 387 (E.D.N.Y. 2013)), or as a mechanism or overcome a procedural bar with respect to a different claim (*see e.g., Brown v. Cunningham*, No. 14 Civ. 3515 (VEC)(MHD), 2015 WL 2405559, at *13 (S.D.N.Y. April 22, 2015)). Here, however, the only support Petitioner provided for his clam of actual innocence was that there was no indictment filed against him. Whether there was a properly filed indictment in this case is a matter of record that could have been raised on direct appeal. Accordingly, Judge Brieant's determination that Petitioner's actual innocence claim was barred by the state's reliance on the fugitive disentitlement doctrine was correct in this case. To the extent that Judge Brieant erred, and Your Honor concludes that Petitioner has raised a free-standing claim of actual innocence that is cognizable on federal habeas review, this Court concludes, and respectfully recommends that Your Honor conclude, that this claim should be denied. Whether there was a properly filed indictment in this case has no bearing whatsoever on whether Petitioner is factually innocent and Petitioner has not satisfied the "extraordinarily high" burden of proof necessary to obtain federal habeas relief on a claim of actual innocence. *House v. Bell*, 547 U.S. 518, 554-555 (2006).

III.   **Petitioner's Habeas Claims**

   A.  **Petitioner's Claims that were Previously Raised in his Initial Petition and Motion for Summary Judgment.**

"The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali*, 529 F.3d at 490, citing *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000) (citations and internal quotation marks omitted).  Here, Petitioner's assertions that (1) the trial and sentencing courts did not have jurisdiction over him because there was no properly filed indictment, (2) he was deprived of the effective assistance of counsel at his 1999 sentencing and when his sentence and commitment sheet was amended in 2000, (3) he was deprived of his right to counsel, due process and equal protection when the Appellate Division dismissed his appeal, and (4) he is actually innocent because "there was no indictment of a grand jury for any of the crime[s] of conviction," were previously raised in Petitioner's 2006 habeas petition, as well as in his 2009 motion pursuant to FRCP 60.  Resp't's Ex. 25 and 29, D.E. 25.  On November 10, 2006, the late Judge Brieant denied these claims raised in the 2006 petition.  Judge Brieant noted that New York State had refused to "grant relief" based on the fugitive disentitlement doctrine and that this doctrine is not barred by the constitution. *Smalls*, 2006 WL 3478983 at *2.  Judge Brieant then concluded that the state's refusal to "grant relief may not be considered as contrary to or involving an unreasonable application of clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in the State Court." *Id.*  Three years later, Judge Seibel denied Petitioner's motion pursuant to Fed. R. Civ. P. 60 on the ground that it was time-barred and, in the alternative, because (1) Petitioner's argument

determination that the petition was a second or successive petition. On August 6, 2012, this Court recommended that the respondent's motion to dismiss be denied because *Mercado's* resentencing resulted in an amended judgment. *Id.* The respondent did not file any objections to that recommendation and did not move to reargue Judge Ramos's subsequent adoption of the Report and Recommendation. In its November 11, 2012, answer, the respondent argued, for the first time, that the *Sparber* resentencing did not reset the date of the petitioner's final judgment. On June 16, 2015, Judge Scheindlin, to whom the case had been reassigned, refused to "reexamine Judge Ramos's September 27, 2012 opinion, declining to bar the 2011 Petition as successive." *Mercado v. Lempke,* No. 11 Civ. 6529 (SAS), 2015 WL 3879636 at *4 (S.D.N.Y. June 16, 2015). Although Judge Scheindlin noted in a footnote that she was inclined to agree with the respondent's position that a *Sparber* resentencing does not qualify as a new judgment (*Id.* at fn. 39), she observed that the government's "papers also contain a glaring omission— nowhere does the Government explain why it failed to object to Magistrate Judge Smith's Report and Recommendation, or to timely move for reconsideration of Judge Ramos's decision to adopt that Report and Recommendation. These procedural lapses cannot be ignored." *Id.* at *4. Judge Scheindlin concluded that "[t]here was a proper time for the Government to raise the arguments included in its opposition papers - but that time has passed. Accordingly, the 2011 Petition is not successive. It will be entertained on the merits." *Id.* In this case, as in *Mercado,* there was a proper time for Respondent to raise its *Sparber* argument, "but that time has passed." Therefore, this Court concludes, and respectfully recommends that Your Honor should conclude, that the 2012 petition be deemed timely.

If Respondent had properly raised this argument in its initial letter, this Court may have recommended that Petitioner's *Sparber* resentencing did not result in a new judgment and that the 2012 petition – other than those claims relating to the *Sparber* resentencing itself – should be deemed second or successive. This Court, however, is constrained to recommend that Respondent waived the argument that Petitioner's *Sparber* resentencing did not result in a new judgment and, consequently, that Respondent's timeliness argument should be rejected.[15]

Notably, this is not the first time Respondent's counsel has found itself in this exact position. In February 2012, in the case of *Mercado v. Lempke*, the respondent, also represented by the Westchester County District Attorney's Office, moved to dismiss a petition for a writ of habeas corpus, in part, on the ground that it was a second or successive petition. *Mercado v. Lempke,* No. 11 Civ. 6529 (ER)(LMS), 2012 WL 4465580 (S.D.N.Y. Aug. 6, 2012). As with Respondent's May 1, 2012, letter in the instant case, the *Mercado* respondent's motion to dismiss noted that a *Sparber* resentencing had occurred, but failed to make any arguments with respect to the impact the *Sparber* resentencing may have had on the timeliness of the petition or on a

---

[15] This Court also concludes, and respectfully recommends that Your Honor should conclude, that even if Your Honor determines that a *Sparber* resentencing does not result in an amended judgment, the law of the case doctrine counsels against Your Honor revisiting the adoption of this Court's July 25, 2012, Report and Recommendation. Pursuant to that doctrine, revisiting a prior ruling is only proper when there is a "cogent" and "compelling" reason such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mikasey*, 529 F.3d 478, 490 (2d Cir. 2008). Here, Respondent presents no new evidence, there is no intervening change of controlling law, and Respondent fails to establish that manifest injustice would ensue from allowing Your Honor's initial determination to remain undisturbed. Further, there is no need to correct a clear error. As of the date of this Report and Recommendation, the Second Circuit has not addressed the impact of a *Sparber* resentencing on the finality of a petitioner's conviction and the only two decisions from this district to have touched upon the issue have reached conflicting conclusions. Therefore, there is no clear authority for the proposition that a *Sparber* resentencing does not result in an amended judgment for federal habeas purposes and, consequently, there is no "clear error" for Your Honor to correct.

address whether Petitioner's *Sparber* resentencing rendered his 2012 petition timely or impacted whether his 2012 petition was second or successive; nor did Respondent draw any distinction between a *Sparber* resentencing and any other type of resentencing.  Instead, Respondent solely argued that the 2012 Petition was second or successive and did not address the issue of resentencing at all.  In formulating its letter in this fashion, Respondent tacitly suggested that a habeas petition could be deemed second or successive irrespective of an intervening resentencing – under *Sparber* or otherwise.  Consequently, this Court evaluated Respondent's letter on its face, treated Petitioner's resentencing as a typical resentencing, and recommended that Respondent's request be denied because Petitioner's resentencing – as in the ordinary case – resulted in an amended judgment.  Respondent failed to file any objections to that determination and did not move to reargue Judge Karas's adoption of this Court's Report and Recommendation.  Therefore, Respondent in this case has waived the argument that Petitioner's *Sparber* resentencing did not result in an amended judgment.  *See King v. City of New York, Dept. of Corrections,* 419 Fed. Appx. 25 (2d Cir. April 4, 2011) ("[a] party's failure to timely object to a magistrate judge's report and recommendation 'may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object' ") (citation omitted).[14]

---

[14] It is irrelevant that Respondent's initial letter sought transfer of Petitioner's case to the Second Circuit on the ground that it was second or successive and that Respondent's instant answer seeks dismissal on the ground of untimeliness.  Both arguments rest on the exact same critical supposition – that Petitioner's *Sparber* resentencing did not result in an amended judgment.  To the extent that Respondent waived this argument with respect to its position that the 2012 petition was second or successive by failing to object to this Court's Report and Recommendation, it necessarily waived that argument with respect to timeliness.  Indeed, Respondent fails to draw any distinction between the concepts of timeliness and successiveness to explain its failure to file objections; nor does it offer any other explanation for this omission.

qualify as a new judgment), *with Fields v. Lee,* No. 12 Civ. 4878 (CS) (JCM), 2016 WL 889788

at *6-7 (S.D.N.Y. Jan. 28 2016) ("I find that the *Sparber* Resentencing led to a new 'judgment'

for the purposes of AEDPA, and the AEDPA limitations period did not begin to run until this

new judgment was final"), *adopted by* 2016 WL 879319; *Campbell v. Sheahan,* No. 14 Civ.

6585 (MAT), 2015 WL 7288703, at * 2-3 (W.D.N.Y. Nov. 16, 2015) (finding that, pursuant to

*Magwood,* a resentencing under Corrections Law § 601-d results in a "new judgment").[13]

Notwithstanding this analysis, this Court may not reach Respondent's untimeliness claim

because Respondent has waived the argument that Petitioner's *Sparber* resentencing did not

result in a new judgment.  In Respondent's May 1, 2012, letter seeking to transfer the 2012

petition to the Second Circuit on the ground that it was a second or successive petition,

Respondent, although noting that Petitioner had been resentenced pursuant to *Sparber,* did not

-------------------------------------------------

[13] In the case of *Hibbert v. Lempke,* No. 14 Civ. 6424, 2015 WL 5022352 (W.D.N.Y.
Aug. 24, 2015), after the petitioner's first habeas petition was denied, he was resentenced
pursuant to S*parber*.  At that resentencing, the court, upon consent of the District Attorney,
reimposed the original sentence without a term of PRS.  Thereafter, the petitioner sought leave
from the Second Circuit to file a second or successive petition.  In an unpublished mandate
issued on August 28, 2014, and docketed under the case number associated with the petitioner's
original petition (03 Civ. 6050), a three judge panel ordered that the petitioner's leave application
was denied as unnecessary.  The panel, citing *Magwood,* determined that the petitioner's
proposed petition was not successive because of his intervening *Sparber* resentencing pursuant to
Penal Law § 70.85.
    Pursuant to the local rules of the Second Circuit, this mandate has no precedential value
(*See* 2d Cir. R. § 32.1.1, Disposition by Summary Order), and a review of the docket in *Hibbert*
reveals that the question of whether a *Sparber* resentencing results in an amended judgment for
habeas purposes was not briefed by the parties.  Further, *Marmolejos* and *Gonzalez,* the two
published Second Circuit cases that establish the contours of what constitutes an amended
judgment for habeas purposes, were both decided after the Second Circuit mandate at issue in
*Hibbert,* and cast significant doubt on the continued viability of the legal finding in that mandate.
Put differently, if the issue in *Hibbert* had been fully briefed for the Second Circuit, and if the
issue had been decided after *Marmolejos* and *Gonzalez,* this Court believes the mandate may
have been decided differently.  Furthermore, in *Hibbert,* the District Attorney consented to the
reimposition of the original sentence without a term of PRS, which afforded the resentencing
court with some discretion to determine whether or not to impose PRS.  Here, by contrast, the
court had no such discretion.  Accordingly, the mandate in *Hibbert* is both factually and legally
distinguishable.

Therefore, this Court concludes, and respectfully recommends that Your Honor should conclude, that these claims should be denied.[17]

## B. Petitioner's Remaining Claims

Petitioner's remaining claims – those not previously denied by Judge Brieant and Judge Seibel – are as follows: (1) Petitioner was deprived of counsel at his resentencing proceeding (ground "B" of the 2012 petition), (2) the sentencing court relied on "information outside the province of the jury to enhance the sentence" (ground "C" of the 2012 petition),  (3) Petitioner was deprived of due process of law when the Appellate Division "failed to review his" pro se supplemental brief (ground "D" of the 2012 petition), (4) the prosecution filed a false affidavit stating that the prosecution had filed an opposition to Petitioner's supplemental brief (ground "F" of the 2012 petition), and (5) the People failed to satisfy their burden under *Brady,* because the People failed to disclose to Petitioner that the attorney "he hired to represent him at trial… and to perfect his [d]irect [a]ppeal was an unlicensed attorney"  (Supplemental Petition, D.E. 46 at 1). Petitioner further argues that the fact that his attorneys were not licensed rendered those attorneys ineffective and "bolsters" his claims that the trial court lacked jurisdiction over him and that the Appellate Division erred in denying his direct appeal.  D.E. 46 at 5-10.

Petitioner's claim that he was deprived of the right to the effective assistance of counsel at his 2009 resentencing was raised in his counseled direct appeal and in his supplemental *pro se* brief.  Resp't's Ex. 36 and Ex. 38, D.E. 25.  Petitioner asserted that his attorney "was not familiar

---

[17]Another avenue for the denial of these claims is the method utilized by the courts in *Campbell,* 2015 WL 728703, at \*2-3, and *Mills v. Lempke,* No. 11 Civ. 0440 (MAT), 2013 WL 435477, at \*6 (W.D.N.Y. Feb. 4, 2013).  In those cases, the courts noted that, although a petitioner's *Sparber* resentencing resulted in a new judgment and was not second or successive, footnote 15 to the *Magwood* decision sanctioned "summary dismissal of previously-raised habeas claims in a subsequent petition when such claims have already been analyzed by the federal court in an earlier petition."

with a single thing that was the subject of the proceeding" and that, if counsel had reviewed the

first sentencing he would have seen that the original sentencing court had not taken post-release

supervision into account and, therefore, counsel should have asked that the resentencing court

"vacate[] and reconsider the propriety of sentences of incarceration in light of the post-release

term it was now to impose." D.E. 25, Ex. 36.  In rejecting this claim on direct appeal, the

Appellate Division held as follows: "To the extent that the defendant's claims of ineffective

assistance of counsel are based upon matter dehors the record, they may not be reviewed on

direct appeal.  Insofar as we are able to review those claims, defense counsel provided the

defendant with meaningful representation." *Smalls,* 84 A.D.3d at 1122 (internal citations

omitted).

   In order to prevail under *Strickland*, Petitioner must show that his counsel's

representation was "fundamentally defective" and that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,*

citing *Strickland,* 466 U.S. at 687.  Satisfying this burden is particularly difficult in the habeas

context because "even a strong case for relief does not mean the state court's contrary conclusion

was unreasonable." *Harrington* 562 U.S. at 88.  Both AEDPA and *Strickland* standards are

"highly deferential," and "when the two apply in tandem, review is 'doubly' so." *Id.* at 105

(citations omitted).  "The question is whether there is any reasonable argument that counsel

satisfied *Strickland's* deferential standard." *Id.*

   Pursuant to *Sparber* and its progeny, the resentencing court was authorized to do one of

two things – "pronounce a term of PRS or, upon consent of the People, omit the PRS term from

[Petitioner's] sentence and reimpose the original determinate prison term without PRS." *Boyer,*

22 N.Y.3d at fn. 1, citing New York Correction Law § 601-d.  Petitioner's resentencing was not a

"plenary proceeding." *Id.* at 24.  Rather, it was "limited to remedying" the "discrete" error of the omission of a term of PRS from the oral pronouncement of Petitioner's sentence at his initial sentencing.  *Id.*  The resentencing court faithfully followed these dictates and imposed legally permissible terms of PRS.  Therefore, there was no basis for defense counsel, Paul Pickelle, Esq., to object to the resentencing and there is nothing Mr. Pickelle could have done that would have altered the proceeding in any way.  Further, contrary to Petitioner's claim, the resentencing court was not statutorily authorized to reconsider the "propriety of sentences of incarceration." Accordingly, this Court concludes and respectfully recommends that Your Honor should conclude, that the Appellate Division's determination that, to the extent Petitioner's claim was reviewable on direct appeal, his 2009 resentencing counsel provided effective assistance, was neither contrary to nor an unreasonable application of Supreme Court precedent.

Petitioner's argument that the sentencing court relied on "information outside the province of the jury to enhance the sentence," was first raised in his *pro se* supplemental brief, filed with the Appellate Division.  Resp't's Ex. 38 at 31, D.E. 25.  In rejecting this claim, the Appellate Division held that "[Petitioner's] remaining contentions raised in his pro se supplemental brief are not properly before this Court." *Smalls,* 84 A.D.3d at 1122.  To determine the proper standard by which to review this determination, this Court must first classify the determination "as either (1) fairly appearing to rest primarily on federal law or (2) fairly appearing to rest primarily on state procedural law." *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006).  If the determination falls within the first classification, and does not contain a "clear and express statement of reliance on a state procedural bar," it is reviewed under AEDPA's deferential posture for evaluating "a state court's disposition of a federal claim." *Id.*  If the determination falls into the second category, the claim is not reviewable if the state procedural

law is "independent" and "adequate to support the judgment." *Id.* The Second Circuit has instructed federal habeas courts to look to three factors to determine whether a state court determination falls into the first or the second category. Those factors are "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." *Id.* at 139.

Here, the face of the Appellate Division's decision rejecting the claims in Petitioner's *pro se* brief does not reveal reliance on any federal law. Further, there is strong reason to believe that the Appellate Division was aware of and applied a state procedural bar. In 2000, the Appellate Division had dismissed Petitioner's appeal on the ground that Petitioner was not amenable to the court's jurisdiction, because he had become a fugitive. Following Petitioner's 2009 resentencing, he filed a direct appeal. Other than Petitioner's arguments that he received ineffective assistance of counsel at his resentencing and that the resentencing court should have revisited Petitioner's entire sentence - both of which mirrored claims in his counseled brief - the remainder of the arguments in Petitioner's supplemental *pro se* brief related to his underlying conviction, his initial sentencing, and to the amendment of his sentence and commitment sheet. Resp't's Ex. 38, D.E. 25. The People, in their supplemental response, argued that these claims were not properly before the Appellate Division in an appeal from a *Sparber* resentencing. Resp't's Ex. 39, D.E. 25. In its decision affirming Petitioner's 2009 resentence, the Appellate Division specifically described Petitioner's appeal as an appeal "from a resentence" (*Smalls,* 84 A.D.3d at 1122), thereby expressly circumscribing the scope of its review. Therefore, the Appellate Division's holding that Petitioner's remaining claims – i.e., those relating to his underlying conviction and sentencing – were not properly before the court, was a state procedural determination based on the limited scope of the Appellate Division's review and, in context, an adoption of the People's

procedural argument. Moreover, the New York State Court of Appeals has expressly stated that the Appellate Division's review of a *Sparber* resentencing is limited to claims related to that resentencing. *See Lingle,* 16 N.Y.3d at 635 ("[t]he defendant's right to appeal is limited to the correction of errors or the abuse of discretion at the resentencing proceeding"); *see also People v. Curtis,* 119 A.D.3d 705 (2d Dept. 2014) ("[t]he defendant's right to appeal from his resentence is limited to the correction of errors at the resentencing proceeding. Accordingly, the defendant's contentions which relate to alleged errors in the plea proceeding are not properly before this Court") (internal citation omitted). Therefore, I conclude that the Appellate Division's rejection of these claims rested primarily on a state procedural bar.

Furthermore, this procedural bar is both independent and adequate to support the judgment. Under *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir. 2003), the court analyzes whether a procedural bar is adequate by looking at three guideposts:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto,* 331 F.3d at 240.

Here, the Appellate Division's determination, in context, leaves little doubt that it "actually relied" on a state procedural bar. Further, state case law demands compliance with this procedural bar. Lastly, demanding perfect compliance with the procedural rule would serve a legitimate governmental interest in that it would prevent a defendant from using an appeal from a *Sparber* resentencing to raise otherwise time-barred claims regarding the defendant's underlying conviction and sentencing. Accordingly, the procedural bar employed by the Appellate Division

was both independent and adequate to support the judgment, and Petitioner's claim is procedurally barred. Since Petitioner fails to allege, let alone establish, cause for this procedural default and prejudice arising therefrom, or that the failure to review his claim will result in a fundamental miscarriage of justice, Petitioner's claim is not reviewable by the Court. *Coleman*, 501 U.S. at 750. Therefore, this Court concludes, and respectfully recommends that Your Honor should conclude, that Petitioner's claim that his sentence was enhanced based on facts that were not found by the jury, should be denied.

This Court further concludes, and respectfully recommends that your Honor conclude, that Petitioner's claim that he was deprived of due process of law when the Appellate Division "failed to review his" *pro se* supplemental brief should be denied. Even assuming, *arguendo*, that federal law required the Appellate Division to review the claims in Petitioner's supplemental brief, the Appellate Division's decision establishes that the Appellate Division reviewed those claims and found that they were not properly before the court. Since Petitioner's claim rests on a false factual premise, he fails to establish that the Appellate Division's determination was contrary to or involved an unreasonable application of Supreme Court precedent.

Petitioner's claim that the prosecution filed a false affidavit stating that it had filed an opposition to Petitioner's supplemental brief should also be denied because, even assuming, *arguendo*, that this claim is true, Petitioner fails to establish that the filing of such an affidavit is contrary to federal law. Therefore, this Court concludes, and respectfully recommends that Your Honor conclude, that this claim should be denied.[18]

---

[18] This claim is also demonstrably false. Respondent has supplied the Court with a copy of its opposition to Petitioner's supplemental brief. Resp't's Ex. 39, D.E. 25. Appended to that copy is an affidavit of service which reflects that the supplemental brief for Respondent was served on both Petitioner and Petitioner's counsel. *Id.*

Petitioner's final claim is that he recently discovered that the attorney "he hired to represent him at trial… and to perfect his [d]irect [a]ppeal was an unlicensed attorney." D.E. 46. Specifically, Petitioner asserts that attorneys Sara Goldman, Daniel Furman, and Frederick Celani were unlicensed to practice law at the time of their representation. The record establishes, however, that none of these attorneys represented Petitioner at trial or on direct appeal. Rather, Petitioner was represented at the pre-trial hearing, jury selection and at the initial sentencing by Steven Levine, Esq.; Petitioner was represented at trial by Harvey Slovis, Esq. (*Smalls,* 2009 WL 2902516 at *1); Petitioner was represented at his *Sparber* resentencing by Paul Pickelle, Esq. (Resp't's Ex. 47, D.E. 25); and Petitioner was represented on his appeal from his *Sparber* resentencing by Marianne Karas, Esq. (Resp't's Ex. 36, D.E. 25).

Furthermore, Petitioner has never raised this claim in state court. Petitioner's allegations, coupled with the exhibits annexed to his supplemental memorandum of law (D.E. 46) and reply memorandum (D.E. 47), show that Ms. Goldman and Mr. Furman represented Petitioner with respect to a motion to reargue the denial of his *pro se* NYCPL § 440.10 motion and a motion for leave to appeal from the denial of that motion to reargue.[19] Since these attorneys represented Petitioner subsequent to his initial direct appeal and on matters that were unrelated to his *Sparber* resentencing or his appeal therefrom, and since the status of the respective law licenses of these attorneys is not part of the record of Petitioner's trial, sentencing, or resentencing, the mechanism for Petitioner to assert a claim of ineffective assistance of counsel against these attorneys is a NYCPL § 440.10 motion. Petitioner's failure to avail himself of this state process renders his claim unexhausted. *See Gentile v. Larkin,* No. 12 Civ. 55 (SLT), 2014 WL 4966135, at *6

---

[19] There is no evidence before the Court which would establish that Mr. Celani represented Petitioner on this matter.

(E.D.N.Y., Sept. 30, 2014) ("[i]n order to exhaust his ineffective assistance claim, Petitioner must file a § 440.10 motion in state Supreme Court, and appeal from that motion if it is denied").

Moreover, Petitioner cannot establish cause for the default or any resulting prejudice; he has also failed to allege or demonstrate that failure to consider the claim will result in a miscarriage of justice. Indeed, Petitioner's only explanation for his failure to raise this claim at an earlier time is that the information that these attorneys were unlicensed was suppressed by the prosecution. D.E. 47 at 5. This assertion, however, does not adequately explain Petitioner's failure to first raise this claim in state court.

In any event, even assuming, *arguendo*, that these attorneys were not licensed to practice law at the time of their representation, Petitioner's claim fails on the merits. Whether Petitioner's various attorneys were licensed to practice law is not exculpatory within the meaning of *Brady* because this information does not tend to show that Petitioner is not guilty. *See Lewis,* 790 F.3d at 123. Furthermore, Petitioner's post-conviction right to counsel under the Sixth Amendment only extended to his direct appeal; there is no federal right to counsel in collateral proceedings. *Carranza v. United States,* 794 F.3d 237, 242 (2d Cir. 2015), citing *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). Thus, Petitioner fails to establish that he was entitled to the effective assistance of counsel on a motion to reargue the denial of a NYCPL § 440.10 motion or on a motion for leave to appeal the denial of the motion to reargue.

Petitioner's ancillary assertion that his attorneys not being licensed bolsters his claims that the trial court lacked jurisdiction over him and that the Appellate Division erred in dismissing his direct appeal should also be denied. Whether these attorneys were licensed has no bearing on whether the court had jurisdiction over Petitioner or whether the Appellate Division properly dismissed his appeal. Accordingly, this Court concludes, and respectfully recommends

that Your Honor conclude, that Petitioner's *Brady* claim and ineffective assistance of counsel claim should be denied.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed in its entirety. Additionally, since the 2012 petition is not meritorious, this Court concludes and respectfully recommends that Your Honor conclude that Petitioner's motion for summary judgment (D.E. 53) should be denied as well. *See Dixon v. U.S.,* No. 14 Civ. 960 (KMK), 2015 WL 851794 at *5 (S.D.N.Y. February 27, 2015). Since Petitioner's claims present no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kenneth M. Karas, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  Requests for extensions of time to file objections must be made to Judge Karas.

Dated: 5\11 , 2016
White Plains, NY

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the Plaintiff.