UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN SMALLS,

     Petitioner,

  v.

WILLIAM LEE, Superintendent,

     Respondent.

Case No. 12-CV-2083 (KMK) (LMS)

<u>ORDER ADOPTING R&R</u>

KENNETH M. KARAS, District Judge:

   On March 19, 2012, Benjamin Smalls ("Petitioner"), proceeding pro se, filed a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (the "Petition"), challenging his

October 14, 1999 judgment of conviction in New York state court and his aggregate term of

imprisonment of 31 years to life in prison after being convicted of multiple counts of, among

others, kidnapping, assault, and burglary. (Pet. for Writ of Habeas Corpus 1 ("Pet.") (Dkt. No.

2).) On April 27, 2012, the case was referred to Magistrate Judge Lisa Margaret Smith ("Judge

Smith") pursuant to 28 U.S.C. § 636(b)(1). (*See* Order Referring Case to Magistrate Judge (Dkt.

No. 8).) On May 24, 2016, Judge Smith issued a Report and Recommendation (the "R&R")

recommending that the Petition be denied. (*See* Dkt. No. 64.) For the reasons set forth below,

the Court adopts the R&R.

## I. <u>Background</u>

   The factual and procedural background of this case is set forth, in part, in the R&R.

(R&R 3–8.) Because of the complex history of this case, the Court nevertheless relates the

pertinent facts.

On October 14, 1999, Petitioner was convicted in Westchester County Supreme Court for kidnapping in the first degree, two counts of assault in the second degree, burglary in the first degree, criminal use of a firearm in the first degree, three counts of criminal possession of a weapon in the third degree, and menacing in the second degree.  (Pet. 1.)  After the close of evidence but prior to the reading of the verdict, Petitioner absconded.  (Resp't's Mem. of Law in Opp. to Pet. for Writ of Habeas Corpus ("Resp't's Opp.") Ex. 46, at 6–7 (Dkt. No. 25).) Petitioner was thereafter sentenced in absentia to an aggregate indeterminate term of 31 years to life.  (*See id.* at 13–18.)  When asked by the People during sentencing about the possibility of post-release supervision, the court remarked that it "[would] not say anything about it.  The statute will take care of it."  (*Id.* at 13.)  With Petitioner's whereabouts still unknown, Petitioner's attorney filed a notice of appeal.  (*See* Resp't's Opp. Ex. 2.)  Upon motion by the People, the New York Appellate Division (the "Appellate Division") dismissed the appeal because Petitioner, as a fugitive, was "not amenable to the jurisdiction of [the] court."  (Resp't's Opp. Ex. 4.)

On July 21, 2000, after Petitioner's apprehension, the records coordinator at the correctional facility to which Petitioner was committed submitted an inquiry to the trial judge asking for clarification on certain issues with Petitioner's sentence and commitment form.  (*See* Pet. Ex. D.)  On August 17, 2000, the trial court responded with a corrected sentence and commitment form, accurately reflecting the sentence orally imposed at Petitioner's sentencing. (*See id.*; Resp't's Opp. Ex. 46.)

Petitioner thereafter filed the first of several actions challenging his conviction and sentence.  On June 24, 2000, Petitioner filed a pro se habeas corpus petition in New York Supreme Court, arguing that he was deprived effective assistance of counsel at sentencing

because the attorney who represented him at sentencing was different from the one who represented him at trial.  (*See* Resp't's Opp. Ex. 5.)  Following opposition briefing from the People, (*see* Resp't's Opp. Ex. 6), Petitioner submitted a supplemental reply brief alleging ineffective assistance of counsel at trial and defectiveness of the indictment, (*see* Resp't's Opp. Ex. 7).[1]  The Supreme Court of Westchester County held that because a habeas petition "cannot be utilized to review claimed errors which could have been raised on appeal but were not," and because there was "absolutely no merit to any of [] [P]etitioner's contentions," the petition was denied.  (*Id.* at 3.)  That judgment was affirmed on appeal, with the Appellate Division concluding that a habeas proceeding "was not the appropriate vehicle for asserting the claims raised in the petition."  (Resp't's Opp. Ex. 11.)

On April 12, 2002, Petitioner filed a pro se motion pursuant to New York Criminal Procedure Law ("CPL") §§ 440.10(1)(a), (h), arguing that the incident report generated by the local police department was insufficient, the indictment was defective for not having been signed by the foreperson and the district attorney, and he was denied effective assistance of counsel at sentencing.  (*See* Resp't's Opp. Ex. 13.)  The Supreme Court of Westchester County denied the motion, saying that "a CPL 440.10 motion cannot be utilized as a substitute for direct appeal" and noting that Petitioner's arguments were without merit anyway.  (*See* Resp't's Opp. Ex. 15, at 2.)  The Appellate Division denied leave to appeal the decision.  (*See* Resp't's Opp. Ex. 19.)

On June 16, 2003, Petitioner, through pro bono legal counsel, filed a motion to renew the § 440.10 motion.  (*See* Resp't's Opp. Ex. 21, at unnumbered 8.)  The motion, which is not in the record, was denied on August 25, 2003.  (*Id.*)

---

[1] Petitioner's supplemental reply brief is not in the record.

On October 18, 2004, Petitioner, proceeding again pro se, moved in the Appellate Division to vacate the dismissal of his direct appeal from his conviction, arguing that the appellate court had failed to appoint an attorney to represent Petitioner's interests when the appeal was pending.  (*See* Resp't's Opp. Ex. 21.)  That motion was denied on November 23, 2004.  (*See* Resp't's Opp. Ex. 23.)

On July 21, 2006, Petitioner, still proceeding pro se, filed his first federal habeas petition (the "First Federal Habeas Petition"), arguing that (1) there was no valid indictment, (2) he was denied effective assistance of counsel at sentencing, (3) he was denied the right to counsel on direct appeal, (4) he was denied the right to counsel when the trial court conducted a resentencing hearing in the absence of Petitioner or counsel, (5) he was denied due process and equal protection when the appellate court refused to hear his constitutional arguments on direct appeal, and (6) he is actually innocent.  (*See* Resp't's Opp. Ex. 25, at unnumbered 8–13.)  On November 26, 2006, Judge Charles E. Brieant denied the petition, saying that the petition was time-barred and, even if the claims were timely, all of them were procedurally defaulted because the arguments could have been raised, but were not, on direct appeal.  (*See* Resp't's Opp. Ex. 27.)  While Petitioner's appeal of the Second Circuit's affirmance of that decision to the Supreme Court was pending, Petitioner moved in the district court under Federal Rule of Civil Procedure 60(b) to vacate the judgment.  (*See* Resp't's Opp. Ex. 29.)  The motion was denied by Judge Cathy Seibel on September 10, 2009.  (*See* Resp't's Opp. Ex. 31.)  *See Smalls v. Smith*, No. 05-CV-5182, 2009 WL 2902516 (S.D.N.Y. Sept. 10, 2009).

On May 5, 2009, Petitioner, still pro se, moved under CPL § 440.20 to vacate his sentence on the grounds that the judgment and sentencing minutes did not reflect imposition of a term of post-release supervision as required by law and his indeterminate sentence for the

4

kidnapping count was unlawful. (*See* Resp't's Opp. Ex. 33.)  The motion was granted in part

and denied in part on June 29, 2009, when Judge Barbara G. Zambelli, who had presided over

Petitioner's trial, ordered that Petitioner be resentenced pursuant to *People v. Sparber*, 889

N.E.2d 459 (N.Y. 2008), *superseded in part by statute*, N.Y. Correct. Law § 601-d, N.Y. Penal

Law § 70.85, *as recognized in People ex rel. Joseph II v. Superintendent of Southport Corr.*

*Facility*, 931 N.E.2d 76 (N.Y. 2010), to include terms of post-release supervision for the

applicable counts, (*see* Resp't's Opp. Ex. 35).

At his resentencing on August 18, 2009, Petitioner was initially represented by Andrew

Proto. (*See* Resp't's Opp. Ex. 47.)  Mr. Proto disclosed to the court that he worked for the

Westchester County District Attorney's Office during part of Petitioner's case, and while Mr.

Proto felt there was no conflict, Petitioner indicated at the resentencing that he was concerned

with the possible conflict of interest. (*Id.* at 5.)  The court dismissed Mr. Proto and ordered the

resentencing adjourned until the afternoon when a new attorney could be secured for Petitioner,

noting that "[w]e had all of these other lawyers here this morning, too." (*Id.* at 5–7.)  In the

afternoon, Paul Pickelle appeared on behalf of Petitioner. (*Id.* at 7.)  Mr. Pickelle noted that he

"had occasion to speak briefly with [Petitioner]" and knew that Petitioner "would like to address

the [c]ourt at some point, as well." (*Id.* at 8.)  When asked whether he wanted to be heard

regarding the amount of post-release supervision to be imposed on each count, Mr. Pickelle

declined. (*See id.* at 10.)  The court proceeded to impose the maximum post-release supervision

term for each count. (*See id.* at 12–14.)

Petitioner, through counsel, appealed the resentencing, arguing that he was deprived of

effective assistance of counsel because Mr. Pickelle was not familiar with his case and that the

court should have conducted a plenary resentencing in light of the addition of post-release

supervision.  (*See* Resp't's Opp. Ex. 36.)  Petitioner filed a supplemental pro se brief reiterating the arguments in the counseled brief and raising a number of arguments with respect to the underlying conviction.  (*See* Resp't's Opp. Ex. 38.)  The Appellate Division affirmed on May 17, 2011, saying that the ineffective assistance of counsel claims were "based upon matter dehors the record" and could "not be reviewed on direct appeal," and noting that those claims were without merit anyway.  (*See* Resp't's Opp. Ex. 40.)  The Appellate Division further held that the remaining contentions were either unpreserved for appellate review or not properly before the court.  (*See id.*)

Petitioner, proceeding again pro se, thereafter filed the instant Petition.  Petitioner makes six claims in the Petition: (1) he is actually innocent because the indictment against him was defective; (2) he received ineffective assistance of counsel at all sentencing stages; (3) he was denied his right to a jury trial when the judge used information outside the province of the jury to enhance his sentence; (4) he was denied due process when the Appellate Division denied his initial direct appeal and when the Appellate Division refused to review his pro se supplemental brief on direct appeal from his resentencing; (5) the People failed to disclose exculpatory *Brady* material showing that there were no charges against Petitioner and that the grand jury did not indict him; and (6) the People filed a false affidavit in the Appellate Division saying they had filed an opposition to Petitioner's pro se supplemental brief when they had not actually done so. (Pet. 8–10.)  Petitioner later added a claim that the People failed to disclose exculpatory *Brady* material showing that two of Petitioner's attorneys were not licensed to practice law in New York.  (*See* Pet'r's Suppl. Mem. to Pet. for Habeas Corpus ("Pet'r's Suppl. Mem.") (Dkt. No. 46).)

After Petitioner filed the Petition in this Court, Respondent asked the Court to consider whether the Petition was an impermissible second or successive petition.  (*See* Letter from John James Sergi, Esq., to Court (July 25, 2012) (Dkt. No. 13); Letter from John James Sergi, Esq., to Court (July 25, 2012) (Dkt. No. 14).)  The Court determined that the Petition was not a second or successive petition because the *Sparber* resentencing resulted in an amended judgment that, under Second Circuit precedent, entitled Petitioner to challenge the underlying conviction a second time.  (*See* R. & R. (Dkt. No. 20); Order Adopting R. & R. (Dkt. No. 23).)

Petitioner subsequently filed a Motion for Summary Judgment, (*see* Pet'r's Mot. (Dkt. No. 53)), to which Respondent replied, (*see* Aff. of Lisa M. Denig in Opp. to Mot. for Summ. J. (Dkt. No. 59)).  Judge Smith issued the R&R recommending dismissal of the Petition on May 10, 2016, and it was docketed on May 24, 2016.  (*See* Dkt. No. 64.)  Petitioner timely filed his objections to the R&R on July 14, 2016.  (*See* Pet'r's Obj. to R&R ("Pet'r's Obj.") (Dkt. No. 67); *see also* Memo Endorsement (Dkt. No. 63) (extending Petitioner's time to object to the R&R).)

## II.  Discussion

### A.  Standard of Review

#### 1.  Review of a Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition,"

*id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rule of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

"A district court evaluating a magistrate judge's report may adopt those portions of the report [and recommendation] to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (internal quotation marks omitted), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). However, where a party timely objects to a report and recommendation, as Petitioner has done here, the district court reviews the parts of the report and recommendation to which the party objected de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "When a [petitioner] simply rehashes the same arguments set forth in [his] original petition, however, such objections do not suffice to invoke de novo review of the [r]eport." *Aponte v. Cunningham*, No. 08-CV-6748, 2011 WL 1432037, at *1 (S.D.N.Y. Apr. 11, 2011) (italics omitted); *see also Hall v. Herbert*, Nos. 02-CV-2299, 02-CV-2300, 2004 WL 287115, at *1 (S.D.N.Y. Feb. 11, 2004) ("[T]o the extent that a party simply reiterates his original arguments, the [c]ourt reviews the report and recommendation only for clear error.").

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

8

2. Habeas Corpus Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 563 U.S. 170, 202–03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the

9

petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d

Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State]

Appellate Division did—and indeed we are troubled by the outcome we are constrained to

reach—we . . . . must defer to the determination made by the state court . . . ." (citation omitted)).

Under AEDPA, the factual findings of state courts are presumed to be correct.  *See* 28

U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997).  A petitioner can rebut

this presumption only by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also*

*Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same).  Finally, only federal law claims are

cognizable in habeas proceedings.  "[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.  In conducting habeas review, a

federal court is limited to deciding whether a conviction violated the Constitution, laws, or

treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C.

§ 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall

entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to

the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States.").

a.  Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

state remedies, thereby giving the State the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation

and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a

writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

shall not be granted unless it appears that . . . the applicant has exhausted the remedies available

10

in the courts of the State . . . .").  Accordingly, "the prisoner must fairly present his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim."  *Baldwin*, 541 U.S. at 29 (internal

quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to

have exhausted the remedies available in the courts of the State, within the meaning of this

section, if he has the right under the law of the State to raise, by any available procedure, the

question presented.").  This requirement reflects important "notions of comity between the

federal and State judicial systems."  *Strogov v. Att'y Gen.*, 191 F.3d 188, 191 (2d Cir. 1999).

However, "[a]n application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State."  28 U.S.C. § 2254(b)(2).

There are two components to the exhaustion requirement.  *See McCray v. Bennet*,

No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is

used to determine whether a claim has been exhausted . . . .").  "First, the petitioner must have

fairly presented to an appropriate state court the same federal constitutional claim that he now

urges upon the federal courts."  *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on

other grounds by Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Turner

v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same).  This requirement is satisfied if the claim is

presented in a way that is "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d

at 192, and the state courts are "apprised of both the factual and the legal premises of the claim

[the petitioner] asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997)

(alteration in original) (internal quotation marks omitted).  In other words, a state prisoner need

not cite "chapter and verse of the Constitution" to satisfy this requirement.  *Daye*, 696 F.2d at

194.  However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted).  Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein*, 667 F.2d at 282; *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  If the petitioner fails to exhaust his or her state remedies through this entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods.  *See Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at *3 (S.D.N.Y. Sept. 18, 2014); *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 28, 2012); *Torres v. McGrath*, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006); *Rivera v. Conway*, 350 F. Supp. 2d 536, 544 (S.D.N.Y. 2004).  For example, in New York a defendant may challenge the conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7

(S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised

in a direct appeal. . . .  It is only when a defendant's claim hinges upon facts outside the trial

record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."),

*adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

### b. Procedural Default

In addition to the exhaustion requirement, a federal court "will not consider an issue of

federal law on direct review from a judgment of a state court if that judgment rests on a state-law

ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for

the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).  A state court decision is

"independent" when it "fairly appears" to rest primarily on state law.  *Jimenez v. Walker*, 458

F.3d 130, 138 (2d Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 740 (1991)).  A

decision is "adequate" if it is "'firmly established and regularly followed' by the state in

question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S.

411, 423–24 (1991)).  "Although this doctrine originated in the context of state-court judgments

for which the alternative state and federal grounds were both 'substantive' in nature, the doctrine

'has been applied routinely to state decisions forfeiting federal claims for violation of state

procedural rules.'" *Harris*, 489 U.S. at 260–61; *see also Coleman*, 501 U.S. at 732 ("[A] habeas

petitioner who has failed to meet the State's procedural requirements for presenting his federal

claims has deprived the state courts of an opportunity to address those claims in the first

instance.").

"If it fairly appears that the state court rested its decision primarily on federal law, [a]

[c]ourt may reach the federal question on review" unless the state court "clearly and expressly

state[d] that its judgment rests on a state procedural bar." *Harris*, 489 U.S. at 261, 263 (internal

quotation marks omitted).  This "plain statement" rule applies only "when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law." *Coleman*, 501 U.S. at 739.  When analyzing whether a state court decision rested primarily on federal law or was interwoven with federal law, the court should consider "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." *Jimenez*, 458 F.3d at 145 (2d Cir. 2006).  In cases where there is no evidence the state court rested its decision on federal law, a federal habeas court may "presume that silence in the face of arguments asserting a procedural bar indicate[s] that [an] affirmance was on state procedural grounds." *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993).  "Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

New York permits criminal defendants only one application for direct review.  *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.20(a)(2); *Jimenez*, 458 F.3d at 149 ("[The petitioner] has already taken his one direct appeal [under New York law] . . . .").  "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *Sparks*, 2012 WL 4479250, at *4.  Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the unexhausted claims are therefore deemed exhausted, but procedurally barred.  *See Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and internal quotation marks omitted)); *see also Aparicio*, 269 F.3d at 90 (noting the reality that deeming an unpresented claim to be

exhausted is "cold comfort").  "An applicant seeking habeas relief may escape dismissal on the

merits of a procedurally defaulted claim only by demonstrating 'cause for the default and

prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted."

*Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S.

386, 388 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional

claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the

default," or a showing that the petitioner "is actually innocent of the underlying offense . . . .").

B.  Analysis

Petitioner raises a number of objections to the R&R.  In the interest of clarity, the Court

will group Petitioner's objections together where appropriate.

1.  Factual Background

Petitioner first makes several objections to the background section of the R&R.

Petitioner objects that the R&R inaccurately states that Petitioner argued in his motion to vacate

his sentence in 2009 that "the sentencing court failed to orally impose the required term of

post-release supervision (PRS)."  (Pet'r's Obj. 4.)  Petitioner objects that this statement

misleadingly omits that Petitioner was first sentenced on December 21, 1999 and then

resentenced on August 17, 2000 without the court imposing post-release supervision orally or in

writing.  (*Id.*)  This distinction is immaterial.  The pertinent issue raised in Petitioner's 2009

motion to vacate his sentence, as accurately relayed in the R&R, was that Petitioner's sentence

did not include a term of post-release supervision as required by statute.  (*See* Resp't's Opp. Ex.

33.)  Contrary to Petitioner's claim, count 6 of his original sentence was not dismissed.  (*See*

Resp't's Opp. Ex. 47, at 6.)  There is no indication in the record of such a dismissal, and the

document to which Petitioner cites indicates merely that the correctional administration office

needed clarification regarding the sentencing paperwork.  (*See* Resp't's Opp. Ex. 33, at Ex. A.) This objection is without merit.

In the same vein, Petitioner objects that the R&R "fails to bring to this [C]ourt's attention that the amended sentence of August 17, 2000, was done without counsel, Petitioner, and the imposition of [post-release supervision]."  (Pet'r's Obj. 6.)  To the extent that such a fact is relevant, the Court acknowledges that the correction to Petitioner's sentence and commitment form was done without Petitioner or counsel present, and did not purport to impose a term of post-release supervision.

Petitioner next objects that the R&R inaccurately indicates that Respondent filed a response in opposition to Petitioner's Motion for Summary Judgment and argues that Judge Smith failed to render a decision on the motion.  (*Id.* at 7–8.)  Both of these arguments are contradicted by the facts.  Respondent did file a response to Petitioner's Motion, (*see* Aff. of Lisa M. Denig in Opp. to Pet'r's Mot. for Summ. J. (Dkt. No. 59)), as Petitioner himself is forced to concede, (*see* Pet'r's Obj. 7.  That Respondent chose to make an argument that the Motion was not properly before the Court is of no import; after making that argument and preserving it for appeal (hardly a "threat," as termed by Petitioner), Respondent proceeded to refute the claims in Petitioner's Motion and point out that all of the arguments made in the Motion were merely iterations of issues presented in the original Petition.  (*See* Aff. of Lisa M. Denig in Opp. to Pet'r's Mot. for Summ. J. (Dkt. No. 59).)  Moreover, contrary to Petitioner's assertion, Judge Smith did recommend a disposition of Petitioner's Motion for Summary Judgment.  (*See* R&R 33.)  Petitioner cites *Giannulo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) in arguing that Judge Smith was required to enter summary judgment in favor of Petitioner in light of Respondent's failure to respond, (Pet'r's Obj. 8).  Notwithstanding that Respondent did offer a

response and that Judge Smith, as a magistrate judge, is not empowered to enter an order on a dispositive motion, 28 U.S.C. § 636(a)–(b), *Giannulo* is inapposite because Petitioner failed to submit a Local Rule 56.1 statement and, in any event, *Giannulo* held that the failure of a non-movant to contest a movant's statement of material nondisputed facts does not "absolve[] the district court of even checking whether the citation supports the assertion," 322 F.3d at 143 n.5. Petitioner's objections here are without merit.

2.   Timeliness of the Petition

Petitioner objects that Judge Smith improperly determined that Petitioner's resentencing in 2009 was a *Sparber* resentencing and that the record reveals that Petitioner's resentencing "is the result of the sentence being vacated as illegal, unlawful, and unauthorized pursuant to CPL § 440.20." (Pet'r's Obj. 8–9.) This objection is irrelevant because Judge Smith recommended that, notwithstanding her view that Petitioner's *Sparber* resentencing did not serve to create an amended judgment that would toll the statute of limitations for a habeas claim, the Petition should be examined on its merits because Respondent waived such an argument by failing to object to the Report & Recommendation issued by Judge Smith earlier in the proceeding. (R&R 19–22.) Because the Court adopts Judge Smith's recommendation in that respect, Petitioner's objection is immaterial.[2]   Moreover, to the extent Petitioner objects that Judge Smith improperly characterized the 2009 sentencing as a *Sparber* resentencing, this argument is without merit.  The state trial court, in partially granting Petitioner's CPL § 440.20 motion to vacate his sentence, invoked *Sparber* as the ground for resentencing. (*See* Resp't's Opp. Ex. 35, at 4–5.) "It is well established that a federal habeas court may not second-guess a state court's construction of its

---

[2] In addition, because the Court adopts Judge Smith's recommendation that Respondent has waived any argument as to the timeliness of the Petition, the Court expresses no opinion on whether a *Sparber* resentencing gives rise to the type of amended judgment contemplated in *Johnson v. United States*, 623 F.3d 41 (2d Cir. 2010) and *Gonzalez v. United States*, 792 F.3d 232 (2d Cir. 2015).

own law." *Policano v. Herbert*, 453 F.3d 79, 92 (2d Cir. 2006); *see also DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (holding that a federal court on habeas review is not empowered to second-guess a state court's determination about the compliance of jury instructions with state law). The state trial court's determination that Petitioner was resentenced in accordance with *Sparber* is not up for review by this Court. Whether the resentencing was in violation of Petitioner's constitutional rights is an issue addressed below.

### 3. Issues Raised in the First Federal Habeas Petition

Petitioner objects that Judge Smith improperly applied the law of the case doctrine to bar consideration of the claims Petitioner raised in his First Federal Habeas Petition, specifically noting that his argument regarding the *Brady* violation stemming from Respondent's purported failure to disclose that the indictment was defective was not raised in his earlier habeas petition. (Pet'r's Obj. 10–12.)

The law of the case doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and "compelling" reasons." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008). The rule merely "directs a court's discretion," and "does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, (2d Cir. 1983) (noting that the Second Circuit "view[s] . . . the law of the case doctrine as one of sound, albeit not inexorable, practice").

The doctrine's application in the habeas context is unclear. Although the doctrine purports to apply only to rulings made in the "same case," *Ali*, 529 F.3d at 490, the Second Circuit has nevertheless applied the law of the case doctrine to bar habeas litigation of federal issues decided against the petitioner in earlier habeas proceedings or on direct appeal, *see, e.g.*, *DiGuglielmo*, 366 F.3d at 135 (applying law of the case doctrine on renewed petition for habeas

relief); *United States ex rel. Epton v. Nenna*, 446 F.2d 363, 365–66 (2d Cir. 1971) (applying law

of the case doctrine in a habeas case where the Supreme Court had dismissed the direct appeal

for want of a substantial federal question).  Notwithstanding these cases, the Supreme Court has

long indicated that "[c]onventional notions of finality of litigation have no place where life or

liberty is at stake and infringement of constitutional rights is alleged."  *Sanders v. United States*,

373 U.S. 1, 8 (1963).  For example, "it is well-settled that res judicata has no application in the

habeas corpus or § 2255 context."  *Muniz v. United States*, 236 F.3d 122, 126 (2d Cir. 2001).

Though AEDPA created a "modified res judicata rule," *Felker v. Turpin*, 518 U.S. 651, 664

(1996), "AEDPA did not abrogate the well-settled traditional rule," *Muniz*, 236 F.3d at 126.  In

light of the Supreme Court's admonition against invoking common law rules of finality in habeas

proceedings, at least one court in the Second Circuit has recognized the difficulty of applying the

law of the case doctrine to a habeas petition.  *See Colon v. Sheahan*, No. 13-CV-6744, 2016 WL

3919643, at *9 (S.D.N.Y. Jan. 13, 2016), *adopted by* 2016 WL 3926443 (S.D.N.Y. July 14,

2016).  Accordingly, it is unclear whether application of the law of the case doctrine in this

context is appropriate.

     Nor is the Court certain that footnote 15 in *Magwood v. Peterson*, 561 U.S. 320 (2010),

suggests an alternative method of resolving the case.  There, the Supreme Court noted that where

a petitioner "reraise[s] every argument against a sentence that was rejected by the federal courts

during the first round of federal habeas review," "[i]t will not take a court long to dispose of such

claims where the court has already analyzed the legal issues."  *Id.* at 340 n.15 (internal quotation

marks omitted).  Judge Smith noted in the R&R that at least one court in the Second Circuit has

interpreted *Magwood* to allow for summary dismissal of claims raised in earlier habeas petitions

that are not barred by AEDPA's limit on second or successive petitions.  (*See* R&R 25 n.17

(citing *Campbell v. Sheahan*, No. 14-CV-6585, 2015 WL 7288703, at *2–3 (W.D.N.Y. Nov. 16, 2015) (Telesca, J.); *Mills v. Lempke*, No. 11-CV-440, 2013 WL 435477, at *6 (W.D.N.Y. Feb. 4, 2013) (Telesca, J.)).)  But Petitioner is correct that the notion of a summary dismissal in such circumstances is not explicitly endorsed by *Magwood*—the Supreme Court suggested only that where an issue has been settled by a prior court, disposing of the claim a second time will not entail significant effort by the second court to review the issue.  It is unclear whether this observation empowers district courts to summarily dismiss habeas claims properly raised a second time without undertaking an independent examination of the merits.

Nevertheless, the claims raised by Petitioner in the First Federal Habeas Petition may be disposed of on the ground that they are procedurally defaulted.  Petitioner's claims that the indictment was defective and that he received ineffective assistance of counsel at his initial sentencing were considered and rejected by the trial court on Petitioner's first state habeas petition because a habeas petition "cannot be utilized to review claimed errors which could have been raised on appeal but were not."  (*See* Resp't's Opp. Ex. 7, at 3).  The Appellate Division affirmed that judgment, saying the habeas corpus proceeding "was not the appropriate vehicle for asserting the claims raised in the petition."  (*See* Resp't's Opp. Ex. 11.)  Although it is unclear whether this qualifies as a "clear and express statement" that the state court rejected the claims on state procedural grounds, there is no indication that the state court rested its judgment on federal grounds, and thus the "plain statement" rule does not apply.  *See Quirama*, 983 F.2d at 14.  In so concluding, the Court looks to the face of the opinion, whether the state court was aware of a procedural bar, and the practice of state courts in similar circumstances.  *Jimenez*, 458 F.3d at 139.  Here, the face of the opinion indicates that the state court declined to address any of the federal questions raised by Petitioner.  And there is no question the state court was aware of

the procedural bar—that was the primary point raised by the People in its brief.  (*See* Resp't's Opp. Ex. 9, at 8.)  Finally, courts in New York routinely decline criminal defendants an opportunity to raise arguments in a collateral proceeding that could have been raised, but were not, on direct appeal.  *See, e.g.*, *People v. Stewart*, 947 N.E.2d 1182, 1183 (N.Y. 2011); *People v. Hall*, 683 N.Y.S.2d 422, 422 (App. Div. 1998); *People ex rel. St. Germain v. Walker*, 609 N.Y.S.2d 461, 462 (App. Div. 1994).  In these circumstances, there is little doubt that the dismissal of Petitioner's claims was based on an "independent" and "adequate" state procedural ground and are thus procedurally defaulted here.

Similarly, Petitioner's claims that he is actually innocent because the indictment was defective and that the People failed to disclose exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) showing that there were no charges against Petitioner and the grand jury did not indict him fail because they are attempts to merely recast procedurally defaulted claims in different terms.  Such a strategy does not exempt Petitioner from AEDPA's strict procedural requirements.  *Cf., e.g.*, *Rodriguez v. United States*, No. 97-CV-2545, 2005 WL 887142, at *6 (S.D.N.Y. Apr. 15, 2005) (rejecting the petitioner's attempt to avoid the bar on successive habeas petitions by recasting an argument already dismissed by the court); *Gil v. Kelly*, No. 90-CV-603, 1992 WL 151901, at *3 (E.D.N.Y. June 16, 1992) (rejecting the petitioner's attempt to recast his due process argument as one for ineffective assistance of appellate counsel in order to avoid certain exhaustion requirements).

Less clear is whether Petitioner's argument that the Appellate Division's dismissal of his initial direct appeal denied him of due process is also procedurally defaulted.  After Petitioner moved to vacate the dismissal of his direct appeal, the People filed their response, arguing that "a defendant who absconds has no right to appellate review of his judgment of conviction."

21

(Resp't's Opp. Ex. 22, at 7.)  The People did not argue that Petitioner's argument was procedurally defective.  (*See id.*)  In denying Petitioner's motion, the Appellate Division offered no commentary, only saying "the motion is denied."  (Resp't's Opp. Ex. 23.)  Where the face of the decision is ambiguous and the opposition briefing did not raise the issue of a procedural bar, the Court is not certain that Petitioner's claim here is procedurally defaulted.

However, although the Court declines to summarily dismiss claims properly raised on a second habeas petition, Judge Seibel's order on Petitioner's Rule 60(b) Motion in the First Federal Habeas Petition offers a guidepost for disposing of Petitioner's claim here.  (*See* Resp't's Opp. Ex. 31.)  *See Smalls*, 2009 WL 2902516.  There, Judge Seibel reasoned that Petitioner had failed to establish that the Appellate Division's failure to reinstate his direct appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Although Petitioner invoked Second Circuit precedent in arguing that a fugitive has a due process right to have his direct appeal heard, *see Taveras v. Smith*, 463 F.3d 141, 149 (2d Cir. 2006), Judge Seibel noted that AEDPA sets a higher bar for habeas relief.  Namely, Petitioner must show that the state court decision was contrary to *Supreme Court* law, not merely the law of the Second Circuit.  (*See* Resp't's Opp. Ex. 31, at 11.)  *See Smalls*, 2009 WL 2902516, at *10.  Additionally, *Taveras* is distinguishable in that the petitioner in *Taveras*, unlike Petitioner here, was apprehended before the time for a direct appeal had expired.  (*See* Resp't's Opp. Ex. 31, at 11.)  *See Smalls*, 2009 WL 2902516, at *10; *see also Taveras*, 463 F.3d at 150 (noting that the issue before the court was limited to "when [a] fugitive is returned while his appeal is still pending").  Moreover, *Taveras* addressed a different issue of whether the petitioner was entitled to appointment of counsel, *see Taveras*, 463 F.3d at 143, an issue not present here, despite Petitioner's suggestion otherwise, as

Petitioner was represented on his direct appeal by his retained counsel, (*see* Resp't's Opp. Ex. 2). Were none of that sufficient to dispose of Petitioner's argument here, the court in *Taveras* settled the issue by stating that "clearly established federal law does not provide 'a constitutional right to reinstatement of an appeal abandoned by escape.'" *Taveras*, 463 F.3d at 149 (quoting *Joensen v. Wainwright*, 615 F.2d 1077, 1080 (5th Cir. 1980)). Even assuming Petitioner's claim on this point is not procedurally defaulted, it lacks all merit.

Thus, accepting Petitioner's objection that the law of the case doctrine is inapplicable in this circumstance, the claims raised in Petitioner's First Federal Habeas Petition are again dismissed here.

### 4.  Ineffective Assistance of Counsel at 2009 Resentencing

Petitioner next objects that Judge Smith erred in holding that the state court's dismissal of Petitioner's ineffective assistance of counsel claim related to his 2009 resentencing was not contrary to or an unreasonable application of federal law.  (Pet'r's Obj. 12.)  Petitioner claims that his counsel at resentencing was recruited by the trial court from the hallway the same day that Petitioner was to face resentencing and that his counsel, Paul Pickelle, was ignorant of the facts and law related to Petitioner's case.  (*Id.* at 13–14.)

Ineffective assistance of counsel claims are analyzed under the rubric established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007).  *Strickland* created a two-part test directing courts to determine: (1) whether counsel's performance was deficient; and (2) whether prejudice resulted from the attorney's deficient performance.  *See* 466 U.S. at 687; *Harrington*, 562 U.S. at 104.  In order to satisfy the deficiency prong, a petitioner must prove that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  The Court must ask whether the

23

"attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007) (internal quotation marks).

When assessing prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

When the "highly deferential" standards created by *Strickland* and § 2254 act in tandem, habeas review is "doubly" deferential. *Harrington*, 562 U.S. at 105. In the context of habeas review of a state court judgment, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted).

There is an initial question of whether Petitioner's claim in this respect has been exhausted. In denying Petitioner's direct appeal from his resentencing, the Appellate Division noted that "[t]o the extent that the defendant's claims of ineffective assistance of counsel are based upon matters dehors the record, they may not be reviewed on direct appeal." (Resp't's Opp. Ex. 40, at 1.) The court then added that "[i]nsofar as we are able to review those claims, defense counsel provided the defendant with meaningful representation." (*Id.*) In New York, "[c]laims for ineffective assistance of counsel based on evidence outside the trial record should

be raised in a collateral motion to vacate the judgment pursuant to New York Criminal Procedural Law § 440.10." *Acosta v. Couture*, No. 99-CV-9727, 2003 WL 272052, at *6 (S.D.N.Y. Jan. 23, 2003).  Courts in the Second Circuit have held that when the Appellate Division indicates that a claim for ineffective assistance of counsel is unreviewable on direct appeal because it is based upon matters "dehors the record" and the petitioner fails to subsequently file a CPL § 440.10 motion, the claim for ineffective assistance of counsel is unexhausted.  *See Anthoulis v. New York*, No. 11-CV-1908, 2012 WL 194978, at *5 (E.D.N.Y. Jan. 23, 2012) ("It remains open to [the petitioner] to have the state courts consider his ineffective assistance claim based on off-the-record evidence on the merits.  The claim is therefore unexhausted."); *Sloane v. Rock*, No. 09-CV-5923, 2011 WL 2020573, at *5 (S.D.N.Y. Apr. 6, 2011) ("Petitioner never filed a CPL § 440.10 motion with regard to this issue . . . . Thus, . . . Petitioner's claim of ineffective assistance of trial counsel is unexhausted."), *adopted by* 2011 WL 2070754 (S.D.N.Y. May 19, 2011); *Acosta*, 2003 WL 272052, at *6.  No New York court has had an opportunity to examine Petitioner's claim with a full record before it, and therefore Petitioner's claim for ineffective assistance of counsel relating to his 2009 resentencing is unexhausted.

However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Because the record is sufficient to address Petitioner's claim for ineffective assistance of counsel, the Court will exercise its discretion to do so.

Respondent argues that because the resentencing was "conducted solely to allow a court to declare the term of post-release supervision," there was "no genuine basis for an attorney to object to this procedural resentencing."  (Resp't's Opp. 27.)  Judge Smith likewise concluded

that "there was no basis for defense counsel . . . to object to the resentencing and there is nothing

[defense counsel] could have done that would have altered the proceeding in any way." (R&R

27.)  These statements are only partially accurate.  As the trial court acknowledged during the

resentencing hearing, although the imposition of post-release supervision was nondiscretionary,

the range of post-release supervision for each count was within the trial court's discretion. (*See*

Resp't's Opp. Ex. 47, at 9–10.)  For example, on count two of burglary in the first degree,

Petitioner faced between two-and-a-half and five years of post-release supervision. (*See id.* at 9.)

When the trial court asked defense counsel whether he wanted to be heard on the amount of post-

release supervision to be imposed, defense counsel declined. (*See id.* at 10.)  The court

proceeded to impose the maximum term of post-release supervision for every count. (*See id.* at

13–14.)  In light of defense counsel's decision to not say anything at resentencing, it is unclear

whether counsel rendered any meaningful representation. *See Kimmelman v.Morrison*, 477 U.S.

365, 377 (1986) ("The constitutional guarantee of counsel, however, 'cannot be satisfied by mere

formal appointment.'" (quoting *Avery v. Alabama*, 308 U.S. 444, 446 (1940)); *see also Johnson

v. United States*, 313 F.3d 815, 818–19 (2d Cir. 2002) ("[D]efense counsel's failure to object to a

sentencing calculation error that likely resulted in an increase in [the] defendant's period of

incarceration constituted ineffective assistance of counsel."); *cf. Gonzalez v. United States*, 337

F. Supp. 2d 419, 423 (E.D.N.Y. 2004) (ineffective assistance of counsel claim denied where

defense counsel had "argued vigorously in support of his client's claim for a lenient sentence").

Fatal to Petitioner's claim, however, is the absence of prejudice.  Even assuming defense

counsel's representation was deficient, there is no evidence in the record that a plea for lower

terms of post-release supervision would have affected the resentencing proceedings.  At the

initial sentencing, conducted while Petitioner was still at large, the trial court commented: "The

violent acts committed by [Petitioner] on Miss Wagner demonstrate his arrogance and contemptuous attitude towards the rights of others and the rules of law.  [Petitioner's] cowardice in absconding serves to underline the [c]ourt's view of him."  (Resp't's Opp. Ex. 46, at 15.)  And prior to imposing the terms of post-release supervision, the court noted:

> I remember this trial very clearly.  I remember the trial on this charge, these charges very clearly.  I also remember you absconded and also forfeited bail and I remember the people that put up their homes to guarantee your return.  I remember the facts of this case.  I remember the crimes you committed.

(Resp't's Opp. Ex. 47, at 12.)  Moreover, when given an opportunity at the original sentencing to exercise leniency, the trial court declined, sentencing Petitioner to the maximum indeterminate term of 25 years to life for the kidnapping charge.  (*See* Resp't's Opp. Ex. 46, at 16.)  There is thus little doubt the trial court had no sympathy for Petitioner, and in light of these circumstances, and in the absence of any evidence to the contrary, the Court is not persuaded there is any "reasonable probability" that the trial court would have imposed different terms of post-release supervision had defense counsel offered more meaningful representation.  *See, e.g.*, *United States v. Roberston*, No. 09-CR-87, 2011 WL 5353071, at *4 (D. Vt. Oct. 4, 2011) (finding no prejudice where "there [was] no reasonable probability that [evidence of diminished capacity] would have altered the decision of the sentencing judge," noting that the sentencing judge had already denied the request for a below-guidelines sentence), *adopted by* 2011 WL 5507386 (D. Vt. Nov. 7, 2011); *Pena-Rosario v. United States*, No. 07-CV-1830, 2007 WL 4358465, at *6 (S.D.N.Y. Dec. 10, 2007) (finding no prejudice where the plaintiff "ha[d] not explained how additional evidence concerning the scope of his cooperation with the Government would have eventuated in a non-guidelines sentence").  Accordingly, Petitioner's claim for ineffective assistance of counsel at the 2009 resentencing fails on the merits.

5. Impermissible Judicial Fact Finding

Petitioner objects that Judge Smith erred in recommending that the Court dismiss as procedurally defaulted Petitioner's claim that the trial court impermissibly enhanced his sentence without allowing the jury to make findings of fact.  (*See* Pet'r's Obj. 15.)  Petitioner specifically objects that Judge Smith erred in concluding that the Appellate Division's rejection of this claim rested on a state procedural bar.  (*See* Pet'r's Obj. 18–19.)

Petitioner raised this argument for the first time in his pro se supplemental brief filed in the direct appeal from the 2009 resentencing.  (*See* Resp't's Opp. Ex. 38, at 31–32.)  There, he argued that "the trial court was given a sentencing range of between fifteen to twenty-five years as an authorized minimum sentence for Kidnapping in the First Degree," and that "in violation of [Petitioner's] right to trial by jury[,] the court entertained AGGRAVATING FACTOR'S [sic] to sentence [Petitioner] to the upper term of twenty-five years."  (*Id.* at 32 (citation omitted).)  The Appellate Division addressed Petitioner's pro se arguments only by saying that those contentions were "not properly before [the] Court."  (Resp't's Opp. Ex. 40, at 2.)  As set forth in the R&R, this language, combined with the circumstances of the appeal and the practice of New York courts, strongly suggests that the Appellate Division refused to address the arguments because of a state procedural bar.  (*See* R&R 27–30.)  As Judge Smith accurately noted, (*see* R&R 29), courts in New York have held that in a direct appeal from a *Sparber* resentencing, the appellant's right to appeal "is limited to the correction of errors or the abuse of discretion *at the resentencing proceeding*," *People v. Lingle*, 949 N.E.2d 952, 959 (N.Y. 2011) (emphasis added).  There is little doubt that the Appellate Division relied on a state procedural bar to dismiss Petitioner's claims, which related to alleged errors made prior to the resentencing proceeding, and, accordingly, Petitioner may not raise that claim again here.

Even were the Court to entertain this claim, however, it is without merit.  Petitioner is correct that the Supreme Court has held that "any fact . . . that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000), and the Court later extended that ruling to hold that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury," *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013).  But the Court also clarified that "nothing in [common law] history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481.  The minimum term of imprisonment for any indeterminate sentence is one year.  N.Y. Penal Law § 70.00(3).  The same statute adds that where, as here, a defendant is convicted of a class A-I felony, the "minimum period shall not be less than fifteen years nor more than twenty-five years."  *Id.* § 70.00(3)(a)(i).  The statute vests the court with discretion to determine, within that range, the minimum sentence a particular defendant will serve as part of their indeterminate sentence.  *See id.*  Here, the trial court sentenced Petitioner within that range. (*See* Resp't's Opp. Ex. 47.)  There was no impermissible fact finding by the trial court that served to increase the statutory minimum of Petitioner's sentence—the statute properly authorized the trial court to exercise discretion in determining the bottom of the range of the indeterminate sentence.  *See Ward v. Lee*, No. 11-CV-1068, 2014 WL 2465607, at *4 (E.D.N.Y. May 30, 2014) ("[A]s [the petitioner] actually concedes, the statutory range for [the conviction] was an indeterminate sentence between a minimum of 15 to 25 years and a maximum of life imprisonment.  [The petitioner's] sentence, obviously, fell well within that range.  There was no *Apprendi* violation." (citations omitted)).  Petitioner's claim here thus fails.

29

### 6. Failure to Review Pro Se Supplemental Brief

Petitioner next objects that Judge Smith erred in recommending that the Court dismiss Petitioner's claim relating to the alleged failure of the Appellate Division to consider the arguments made in Petitioner's pro se supplemental brief in his appeal from the 2009 resentencing. (Pet'r's Obj. 16–17.) Petitioner again objects that his 2009 resentencing was not a *Sparber* resentencing and that he was entitled to plenary review of the entire conviction and sentence. (*Id.*) As set forth above, whether the Appellate Division was correct in holding that Petitioner's claims were "not properly before [the] court," (Resp't's Opp. Ex. 40, at 2), is not an issue this Court is competent to address, *see Policano*, 453 F.3d at 92 ("It is well established that a federal habeas court may not second-guess a state court's construction of its own law."). There being no ground to dispute the Appellate Division's conclusion that Petitioner's arguments raised in his pro se supplemental brief were not reviewable, the Court concurs with Judge Smith's recommendation that the Appellate Division's refusal to consider those arguments on the merits was not contrary to or an unreasonable application of Supreme Court precedent.

### 7. Actual Innocence

Petitioner objects that Judge Smith erred in failing to address his actual innocence argument. (Pet'r's Obj. 19–21.) To the extent Petitioner's actual innocence argument is based on the allegedly defective indictment, that claim is disposed of above. Moreover, a claim of actual innocence must be grounded in "actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (citing *Smith v. Murray*, 477 U.S. 527 (1986)). Petitioner's argument regarding the allegedly defective indictment, even if taken as true, could prove only legal innocence, and thus cannot sustain a claim for actual innocence. If Petitioner instead intends to establish actual innocence as a factual matter, his effort falls short.

The Supreme Court has not "resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)).  The Supreme Court has recognized, though, that "a petitioner otherwise subject to defenses of abusive or successive use of the writ may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence."  *Herrera*, 506 U.S. at 404 (citing *Sawyer*, 505 U.S. 333).  Similarly, a habeas petitioner "may use his claim of actual innocence as a 'gateway,' or a means of excusing his procedural default."  *Rivas v. Fischer*, 687 F.3d 514, 539 (2d Cir. 2012) (some internal quotation marks omitted).  The claim of actual innocence is thus a procedural "gateway" to allow review of claims otherwise not properly before the Court.  *Id.* at 540–41.

To use a claim of actual innocence as a procedural "gateway," the claim must be both "credible" and "compelling."  *Id.* at 541.  To be credible, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *House v. Bell*, 547 U.S. 518, 537 (2006) (internal quotation marks omitted).  To be compelling, the petitioner must show that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt."  *Id.* at 538.

Petitioner has failed to make any such showing in this petition.  Petitioner has not presented any "new reliable evidence," such as "scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  *House*, 547 U.S. at 537 (internal quotation marks omitted).  Petitioner in fact, has adduced no factual evidence of actual innocence whatsoever.  Moreover, there is no basis for the Court to conclude, based on the record before it, that "no reasonable juror would find [Petitioner] guilty beyond a reasonable doubt."  *Id.* at 538.  Beyond

unsupported assertions to the contrary, Petitioner has made no effort to meet the exacting standard to establish actual innocence.  The purported actual innocence claim is insufficient to excuse the fact that nearly all of Petitioner's habeas claims are procedurally defaulted.

        8.  <u>Filing of False Affidavit</u>

Petitioner objects that Judge Smith erred in summarily dismissing his argument that the People filed a false affidavit of service stating that it served a response to Petitioner's pro se supplemental brief, and that Petitioner is therefore entitled to habeas relief.  As an initial matter, Petitioner's claim has not been exhausted, as he has never presented this argument to a state court.  Exercising, however, its discretion to dismiss the claim on the merits, *see* 28 U.S.C. § 2254(b)(2), the Court determines that Petitioner's claim fails.

First, as Petitioner concedes, the record reflects that the People filed an opposition to Petitioner's pro se supplemental brief and includes an affidavit of service on both Petitioner and Petitioner's counsel at the time.  (*See* Resp't's Opp. Ex. 39, at unnumbered 14.)  Petitioner objects that Gail Haddard, the individual who allegedly served Petitioner, is not counsel for Respondent in this action.  (*See* Pet'r's Obj. 20.)  But Petitioner fails to explain how that fact has any effect on the veracity of the affidavit, aside from citing a provision of New York procedural law that allows certain individuals to file affirmations with the same force and effect as an affidavit.  (*See id.* (citing N.Y. C.P.L.R. § 2106).)  The cited provision is irrelevant, as the individual who served Petitioner filed an affidavit, not an affirmation.  (*See* Resp't's Opp. Ex. 39, at unnumbered 14.)  Petitioner also points to a log book entry for the correctional facility indicating that he did not receive any mail from the Westchester Country District Attorney's office during the period in question.  (*See* Pet. Ex. F.)  But Petitioner offers no explanation for the entry in the log book of a package delivered to him from "Appellate Division," which may

very well have been the memorandum in question.  (*See id.*)  And the logbook covers entries

only through February 7, 2011, (*see id.*), leaving unknown whether Petitioner received the

memorandum after that date.  Moreover, even if the memorandum never made its way to

Petitioner, that would not render the affidavit false—the affidavit states that service was effected

by placing copies of the memorandum addressed to Petitioner and his counsel in the mail.  (*See*

Resp't's Opp. Ex. 39, at unnumbered 14.)  The affidavit is thus not false simply because

Petitioner alleges the mail never arrived.  The evidence adduced by Petitioner is insufficient to

call into question the reliability of the affidavit of service.

   In addition, Petitioner has failed to show how, even if the affidavit was intentionally

false, his constitutional rights were offended.  The cases cited by Petitioner are inapposite; they

stand only for the proposition that a petitioner may be entitled to habeas relief where the

evidence shows that "his imprisonment resulted from perjured testimony, knowingly used by the

State authorities to obtain his conviction," or "from the deliberate suppression used by those

same authorities of evidence favorable to him."  *Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (citing

*Mooney v. Holohan*, 294 U.S. 103 (1935)); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959)

("[I]t is established that a conviction obtained through use of false evidence, known to be such

by representatives of the State, must fall under the Fourteenth Amendment . . . ."); *Hazel-Atlas*

*Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944) ("[T]he courts have developed and

fashioned [an equity rule] to fulfill a universally recognized need for correcting injustices which,

in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to

the [finality] rule.").  When a criminal defendant claims that his or her conviction was procured

by fraud, the court must "'strike a fair balance between the need for both integrity and finality in

criminal prosecutions' by determining whether false testimony was prejudicial in the sense that it

affected the outcome of the trial." *United States v. Stewart*, 433 F.3d 273, 297 (2d Cir. 2006)

(quoting *United States v. Stofsky*, 527 F.2d 237, 239 (2d Cir. 1975)).  The Court must ask

whether there is "any reasonable likelihood that the false testimony could have affected the

judgment of the jury." *Id.* (internal quotation marks omitted).  Petitioner's conviction, having

been final for nearly eleven years at the time the affidavit was signed and filed, could not have

been secured by the filing of the allegedly false affidavit.  There is no nexus between the

affidavit and Petitioner's conviction, and no facts that would lead the Court to believe that any

testimony pertinent to Petitioner's conviction was perjured.  While Petitioner is correct that, in

other contexts, the filing of a false affidavit or the presentation of a false witness may entitle a

petitioner to habeas relief, this is not such a context.  Petitioner's claim, even if believed, fails on

the merits.

### 9. *Brady* Violation Related to Petitioner's Attorneys

Petitioner objects that Judge Smith erred in concluding that Petitioner's claim that

Respondent violated its *Brady* obligations by failing to disclose that some of Petitioner's

attorneys were not admitted to practice law.  (Pet'r's Obj. 25–26.)  Petitioner's claim has not

been exhausted, and he admits that this claim is being raised for the first time now.  (*See* Pet'r's

Suppl. Mem. 1–2.)  The Court determines, however, that Petitioner's argument fails on its own

terms.  *See* 28 U.S.C. § 2254(b)(2).

Far from being "arms of [] [the People]," (Pet'r's Obj. 25), the agencies involved in

investigating the fraudulent legal services organization that represented Petitioner in some of his

collateral proceedings were federal agencies, (*see id.*).  There is no basis to impute knowledge of

those agencies' investigations to the prosecution, a county district attorney's office, and thus no

basis for Petitioner's claim that "evidence" was wrongfully withheld.  Even were this not the

case, Petitioner has failed to explain how the allegedly withheld evidence "tend[s] to exculpate [Petitioner] or reduce the penalty" within the meaning of *Brady*. 373 U.S. at 88. The fraudulent legal services organization, retained by Petitioner on December 3, 2002, did not provide him representation during his conviction or direct appeal, nor did it provide representation during Petitioner's *Sparber* resentencing or appeal thereof. (*See* Pet'r's Suppl. Mem. Ex. D.) There is no credible argument that the fact that two of Petitioner's attorneys in a collateral proceeding were unlicensed "is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. Moreover, as Judge Smith recognized, "there is no right to counsel in state collateral proceedings." *Coleman*, 501 U.S. at 755 (citing *Murray v. Giarratano*, 492 U.S. 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). Even if Petitioner may have been deprived of the assistance of able counsel in some of his collateral proceedings, such deprivation was not the consequence of misconduct by the prosecution, nor did that deprivation call into question the validity of the underlying conviction or sentence.

10. <u>Allegations of Misconduct</u>

Throughout his objections, Petitioner impugns the ethics and impartiality of both Judge Smith and the state trial judge, Judge Zambelli. Specifically, Petitioner alleges that Judge Smith is "psychologically wedded" to her former law clerk, Lisa M. Denig, who is appearing as counsel for Respondent in this action. (Pet'r's Obj. 2–3.) Petitioner also points to an incident in 2006 involving Judge Smith that ultimately led to a civil action against her. (*See* Pet'r's Obj. 33 & Ex. B.) And throughout his objections, Petitioner accuses Judge Smith of abdicating her judicial duties. As for Judge Zambelli, Petitioner includes an article discussing an ethical complaint filed against her involving the solicitation of false testimony. (*See* Pet'r's Obj. 27–28 & Ex. C.)

The bulk of these accusations hardly warrant a response.  The civil suit against Judge Smith and the ethical complaint against Judge Zambelli have no relationship to this case. Petitioner attempts to establish a connection by arguing that Judge Zambelli's conduct in this case reflected the same misconduct alleged in the ethical complaint.  (*See* Pet'r's Obj. 27.)  But whether Judge Zambelli's rulings at trial, which have never before been challenged by Petitioner, were incorrect is wholly unrelated to the issues raised in the ethical complaint, and whether Judge Zambelli ever acted improperly or ruled incorrectly in another case has no bearing on Petitioner's entitlement to habeas relief here.

As for the accusations by Petitioner that Judge Smith is "psychologically wedded" to Ms. Denig, these allegations strain credulity.  Federal law requires a judge to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or in which she "has a personal bias or prejudice concerning a party," *id.* § 455(b)(1).  The question for a court deciding whether recusal is required is "whether 'an objective, disinterested observer, fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal.'"  *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012) (alteration omitted) (quoting *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008)).

The record before the Court does not suggest that a "disinterested observer" would entertain "significant doubt that justice would be done" with Judge Smith on the bench. Contrary to Petitioner's claims, (*see* Pet'r's Obj. 35), Judge Smith was never listed as counsel for Respondent.  Ms. Denig did originally list her business address as the courthouse where Judge Smith sits, and Ms. Denig is a former law clerk of Judge Smith's from several years ago, (*see* Letter from Lisa M. Denig, Esq., to Court (Apr. 25, 2013) 1 (Dkt. No. 39)), but these facts are of

36

no relevance to the case at bar.  Courts routinely deny specious requests to recuse themselves merely because a former law clerk is serving as an attorney in some capacity in the litigation. *See, e.g.*, *Ghee v. Artuz*, 285 F. Supp. 2d 328, 330 (E.D.N.Y. 2003) (noting that several courts permit former law clerks to appear before their judges one year after the termination of their clerkship, and holding that "the [c]ourt finds that, under the present circumstances, it is not necessary to disqualify [the former law clerk] in order to avoid the appearance of impropriety"); *United States v. Occhipinti*, 851 F. Supp. 523, 527 (S.D.N.Y. 1993); *In re Cooke*, 160 B.R. 701, 707–08 (Bankr. D. Conn. 1993); *see also Paws for a Treat LLC v. Christmas Tree Shop*, No. 05-CV-1304, 2006 WL 236750, at *2 (D. Conn. Jan. 24, 2006) ("Many judges begin hearing cases in which their former law clerks appear within one year after the clerkship.").  Petitioner attempts to demonstrate that Judge Smith's partiality is especially egregious by pointing to various portions of the record where Judge Smith allegedly showed favorability toward Ms. Denig.  (*See* Pet'r's Obj. 1–2, 34–36.)  But these accusations amount to no more than dissatisfaction with Judge Smith's recommendations, hardly a reason to doubt her impartiality. In any event, this Court, which has no relationship with Ms. Denig, professional or otherwise, has conducted a de novo review of every issue on which Petitioner offered an objection.[3] Having independently considered those objections, the Court concludes Petitioner's claims for habeas relief are without merit and should be dismissed.

### III.  Conclusion

The remainder of Petitioner's objections are simply reiterations of points already resolved.  The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise.  The Court therefore adopts Judge Smith's R&R.  Petitioner's writ of

---

[3] As noted in the R&R, Petitioner was once represented by Marianne Karas.  (R&R 5.)  To avoid any further claims of judicial bias, it bears noting that Ms. Karas is not related to this Court.

habeas corpus is accordingly dismissed with prejudice, and Petitioner's Motion for Summary Judgment is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent, terminate the pending Motion (Dkt. No. 53), and close the case.

SO ORDERED.

DATED:   September $\partial|$ , 2016
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

38